Mr. Justice-SWÁYNE
(having stated the ease) delivered the opinion of the court
The questions presented for our consideration are questions of law. The facts are undisputed. Our remarks,will be confined to the several objections to the decree taken by the counsel for the appellant.
The fine of three hundred dollars imposed upon the mayor is beyond our jurisdiction. Contempt, of court is a specific criminal offence. The imposition of the fine w'as a judgment in a criminal case. That part pf the clecree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing.† This court can take cognizance of a criminal case only upon a certificate of division in opinion. ■ In Crosby’s Case, Mr. Justice Blackstone said: “The sole adjudication for contempt, and the punishment thereof, belongs exclusively and without interfering to each respective court.” The Circuit, Court having first acquired possession of the original case was entitled to hold it exclusively until the case was finally disposed’ of.‡ Any reliéf to which the city was entitled should have been sought there, and that *393 court was competent to give it, either- in the original or in an auxiliary case. As to any other court the matter was ultra vires.* It was unnecessary, unwarranted in law, and grossly disrespectful to the Circuit Court to invoke the interposition of the State court as to anything within the scope of the litigation already pending in the Federal court.
The order of General Canby, No. 11, was issued seven months after the lease was made. The rights it conferred upon the lessees, whatever they were, had then become fully vested. The order did not purport to annul the lease. It prescribed a rule of conduct as to giving such leases in the future, and concluded as follows: “ And any alienation, disposition, or grant will be subject to any r’ghts and interest of the General government which may be involved, aud shall not extend beyond the time when the questions relative to those rights and interest may be determined by competent authority.” It does not appear that the govern, ment ever took any action touching this lease. The order could not, therefore, in any view, affect the rights .of the parties. The court did not err in refusing to receive it jn evidence.
It has been strenuously insisted that the lease was made by Kennedy without authority, was, therefore, void ab initio, and, if this was not so, that its efficacy, upon the principle of the jus post liminium, wholly ceased when the government of the city was surrendered by the military authorities of the United States to the mayor and council elected under the.city charter.
Although the city of New Orleans was conquered and taken possession of in a civil war waged on the part of the United States to put down an insurrection and restore the supremacy of the National government in the Confederate States, that government had the same power and rights in territory held by conquest as if the territory had belonged to a foreign country and had been subjugated in a foreign *394 war.* In such cases the conquering power has a right to• displace the pre-existing authority, and to assume to such extent as it may deem proper the exercise by itself of all the powers and functions of government. It may appoint all-the necessary officers and clothe them with designated powers, larger or smaller, according to its pleasure. It.may prescribe the revenues to .be paid, and apply them to its ■ own use or otherwise. It may do anything necessary to strengthen itself and weaken the enemy. There is no limit. to the powers that may be exerted in such cases, save those which are found in- the laws and usages of war. These principles hive the sanction of all publicists who have considered .the -subject.
They have been repeatedly recognized and applied by this court.† In the case last cited the President had; by proclamation, established in New Orleans'a Provisional Court for the State of Louisiana, and defined its jurisdiction. This court held the proclamation a rightful exercise of.the power of the executive, the court valid, and its decrees binding upon the, parties brought'before it. In such eases the laws of war take the place of the Constitution and laws of the United States as applied in time of peace. It follows as a corollary from these, propositions that the appointment of Kennedy as mayor and of the Boards of Finance and of Street Landings was valid, and that they were clothed with the powers and duties which pertained to their- respective positions.
■ It can hardly be doubted that to contract for the use .of a portion of the water-front of the eity during the coutiuuance of the military possession of the United States was within the scope of their authority. But, conceding this to be so, it is insisted that when the military jurisdiction terminated the lease fell with it.- . We cannot take this view of the subl ject. The question arises whether the instrument was a *395 fair and reasonable.exercise of the authority under which it was made. A large amount of money was to be expended and was expended by the lessees. The lease was liable to be annulled if the expenditures were not made and the work done within the limited time specified. The war might last many years, or it might at'any time cease and the State and city be restored to their normal condition. The improvements to be made were important to the welfare and prosperity of the city. The company had a right to use them' only for a limited time. The company was to keep them in repair during the life of the lease, and at its termination' they were all to become the property of the city. In the meantime the rental of eight thousand dollars a year was to be paid.
When the military authorities retired the rent notes' unpaid were all handed over to the city. The city took the place of the United States and succeeded to all their rights under, the contract.* The company became bound to the city in all respects as it had before be$u bound to.the covenantees in the lease. The city thereafter collected one of the notes subsequently-due, and it holds the fund, without; an offer to return it, while conducting this litigation. . It is also to be borne in mind that there has been no offer of adjustment touching the lasting and valuable improvements made by the company, nor is there any complaint.that the company has failed in any particular to fulfil their contract.
We think the lease was a fair and reasonable exercise of the power vested in the military mayor and the two boards, and that the injunction awarded by the court below was properly decreed. They ms post liminium and the law of nuisance have no application to the case.
We do not intend to impugn the general principle that the contracts of the conqueror touching .things in conquered territory lose their efficacy when his dominion ceases.
We decide the. case upon its own peculiar circumstances, which' we think are sufficient to take it out of the rule.
*396 We might, perhaps, well hold that the city is estopped from denying the validity of the lease by receiving payment of one of the notes, but we prefer to place o.ur judgment upon the ground before stated.
Judgment affirmed.
Justices CLIFFORD, DAVIS, and BRADLEY did not hear the argument of this case, and did not participate in the judgment.

 Crosby’s Case, 3 Wilson, 188; Williamson’s Case, 26 Pennsylvania-State, 24; Ex parte Kearney, 7 Wheaton, 41.

 Taylor v. Taintor, 16 Wallace, 370; Hagan v. Lucas, 10 Peters, 400; Taylor v. Carryl, 20 Howard, 584.

 Freeman v. Howe, 24 Howard, 450; Buck v. Colbath, 3 Wallace, 334.

 The Prize Cases, 2 Black, 636; Mrs. Alexander’s Cotton, 2 Wallace, 417; Mauran v. The Insurance Company, 6 Id. 1.

 Cross v. Harrison, 16 Howard, 164; Leitensdorfer v. Webb, 20 Id. 176; The Grapeshot, 9 Wallace, 129.

 The United States v. McRae, 8 Law Reports, Equity Cases, 75.