UNITED STATES *v.* BERRY and others.[1]

(*Circuit Court, W. D. Missouri, W. D.* May Term, 1885.)

CONTEMPT—JURISDICTION—INTERFERENCE BY STRIKERS WITH RECEIVER—DIVISION OF DISTRICT.

　A proceeding in contempt for interfering with a receiver apppointed by a United States circuit court is criminal in character and cannot be heard, under the law, in a division of a district other than the one in which the acts amounting to a contempt were committed.

Proceedings for Contempt in the Matter of the Wabash Railroad. On motion for rehearing. See S. C. 24 Fed. Rep. 217.

*Mr. Beebe,* Dist. Atty. U. S., and *Mr. Randolph,* for the United States.

*Mr. Warner* and *Hall & Rodgers,* for defendants.

KREKEL, J. When these cases were before the court heretofore, (24 Fed. Rep. 217,) the question was, had the Moberly strikers interfered with the management of the road in the hands of the court? On hearing, they were found guilty, and sentence of imprisonment was passed on them for contempt. Upon a motion for rehearing, jurisdictional questions are raised, and these are now to be passed on. The following facts are deemed material in their solution:

The Wabash Railroad was, on the petition of creditors and others, taken possession of on the twenty-seventh day of May, 1884, by the circuit court of the United States for the Eastern district of Missouri, who proceeded to appoint receivers, who have since that time operated the road. In the order of court appointing the receivers, they are in-

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

structed to take possession, "and to manage, control, and operate said railroad, preserve and protect all said property, and collect, as far as possible, all accounts, choses in action, and credits due said company, acting in all things under the order of this court, or of such other courts as may entertain jurisdiction of parts of said property as ancillary to the jurisdiction of this court." By another part of said order authority is given complainants "to apply to any other United States circuit court of competent jurisdiction for such order or orders in aid of the primary jurisdiction vested in this court in said cause as may have ancillary jurisdiction herein." Copies of the order quoted from, and the bills upon which the proceedings were had, have been filed in the circuit court of the Eastern and Western divisions of the Western district of Missouri; and orders providing "that the order aforesaid of the circuit court of the United States for the Eastern district of Missouri be approved, and that it be taken and held to be the order of this court, except as to the requirements of a bond as therein mentioned, and the clerk enter the same upon the order-book," have been duly entered.

On the twenty-ninth day of May, 1885, orders suspending proceedings in the courts of the Western districts of Missouri were entered, containing, among other, the following: "With a view to the prevention of unnecessary labor, expense, and delay, and for the purpose of avoiding the unnecessary prosecution of numerous causes involving the same issues between the same parties, it is ordered that the original bills filed by the Wabash, St. Louis & Pacific Railway Company in said causes, and the cross-bills filed by the Central Trust Company of New York and James Cheney, aforesaid, be, and the same are hereby, suspended until the further order of court in the following-named courts, viz.: The circuit court of the United States for the Eastern and Western divisions of the Western district of Missouri." The Western district of Missouri, for judicial purposes, is divided by law into two divisions, the Eastern and Western. Moberly, where the strike occurred, is situate in the Eastern division. The proceedings against the strikers were commenced and proceeded with throughout in the Western division of the Western district of Missouri. The act of congress of 1879, establishing the division, in its second section provides that "all offenses hereafter committed in either of said divisions shall be cognizable and indictable within the division where committed." The act further designates Jefferson City as the place where the courts for the Eastern division, and Kansas City as the place where the courts for the Western division, are to be held. The courts of the two divisions are presided over by the same judges.

Three questions as to the jurisdiction of this court are thereupon raised: (1) Can the circuit court of the Eastern district of Missouri give jurisdiction, ancillary or otherwise, to this court in a case which is pending in its own court? (2) If it can, and did so, has it not, by the order of suspension, deprived or suspended the jurisdiction?

(3) Is the proceeding in contempt of such a character that it can be heard, under the law, in a division other than the one in which the offense was committed?

The first of these questions I have not examined, because the circuit court of the Eastern district of Missouri, on full consideration, having, no doubt, regard to the importance of the matter, made the order. It would not be becoming for a district judge, sitting in the circuit court, to overrule the decision of the circuit court of another district, made by both the circuit and district judges. Besides this, it would seem that, as a matter of comity, any of the courts of the United States within the jurisdiction of which part of the property in the hands of the court is situate should lend, if need be, its aid in the administration, and specially to the protection, of such property; for, in so doing, it would be but carrying out the object for which the law is invoked. The presumption of jurisdiction, if ever indulged in, may be in a case like this.

Regarding the second question, the suspension of the jurisdiction, it is sufficient to say that a careful examination of the petition for suspension, and the order made thereunder, leads to the conclusion that the jurisdiction of the court was not to be interfered with further than the foreclosure proceedings were concerned. This view is concurred in by Judge BREWER, the circuit court judge, who made the order.

It is the third question, the hearing of the case in a division of the district other than the one in which the offense has been committed, which is mainly relied on for the setting aside of the proceedings had. The answer to be given to the question must in a manner depend on the nature of the offense known as contempt of court. By the seventeenth section of the judiciary act of 1789, the courts of the United States are given power "to punish by fine or imprisonment, at the discretion of said court, all contempt of authority in any cause or hearing before the same." The act of congress of 1831 confines these powers to "misbehaviors of any person or persons in the presence of said courts, or so near thereto as to obstruct the administration of justice; the misbehavior of any of the officers of said courts in their official transactions; and the disobedience or resistance by any officer of said court, party, juror, witness, or any other person or persons to any lawful writ, process, order, rule, decree, or command of said court."

This is the law to-day. It will be observed that while the laws seek to limit the powers of the court, not a word is said as to the extent of the fine and imprisonment which the judge may impose. These unlimited discretionary powers are sometimes justified on the ground that a court must have the means to protect itself. What is done by them for that purpose might, however, well be subject to revision. In a contempt case, as the law now stands, the person affected is remediless, unless the court acted without authority. *New Orleans*

v. *Steam-ship Co.* 20 Wall. 387. Proceedings for contempt have at times incidentally been made use of to collect and pay over damages to the party injured, thus making them both civil and criminal. Of late the tendency has been to make them purely criminal. In *Re Ellerbe,* 4 McCrary, 449, S. C. 13 Fed. Rep. 530, Judge McCrary takes this ground, citing a number of authorities in support. This view, with which I coincide, is also calculated to remove any doubt as to whether a judge at chambers can punish for contempt; for trials of criminal offenses, above all others, should be in court. Assuming that proceedings for contempt are criminal in their nature, the question remains, can they be had in a division of the district other than the one in which the offense was committed? Property of the Wabash Railroad is situate in both divisions of the Western district of Missouri, and interferences in one division, affecting its operation, must of necessity affect it in the other. The application for protection of the property was made to the judge at chambers in the Western division. Under the warrants issued the United States marshal arrested the defendants in the Eastern division, and brought them before the court in the Western division, in which the hearing was had and sentence passed. To the strikers themselves it may be of little, if any, importance whether they were tried in the Eastern or Western division of the district, yet, as a question of law, it is of importance.

A few suggestions as to the legislative history as to the divisions of the country generally, and for judicial purposes specially, may not be out of place. As pertaining to the system of government under which we live, the underlying idea is, the bringing near the citizen the government of which he is a part and in which he exercises control and power. The subdivision for judicial purposes no doubt partook of that idea. The constitution of the United States originally provided for the trial of crimes (except impeachment) by jury, and that "such trial shall be held in the state where the said crimes shall have been committed." The sixth amendment of that instrument enacts that "in all criminal prosecutions the accused shall enjoy the right of a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." The constitutional provision last quoted not only requires trials to be had in the district as distinguished from the state, but also provides for the ascertainment of such districts. It is obvious that additional stress is laid upon districts by the change. From the judiciary act of 1789 down to the act of 1879, dividing the Western district of Missouri, it has been the aim of congress to designate the districts in which courts are to be held, and their jurisdiction, as a rule, has been confined to such districts. No such care has, however, been observed regarding the division of districts over which the same judges preside. Thus, for instance, the law provides that the justice allotted to a circuit shall attend at least one term of the circuit court in each district during

every period of two years. No notice is here taken of divisions of districts, but they are treated as a whole. Numbers of similar instances might be cited.

The desire to protect property in the hands of United States courts, under circumstances like those under consideration, has induced me to look into the means the present laws afford for that purpose. Aside from hearing cases during regular terms, the law provides for the holding of special terms, at the discretion of the courts, for the trial of criminal cases.

Adjourned terms may be held. The law also provides that while the supreme court of the United States is in session, it may direct special sessions for the trial of criminal cases, to be held at any convenient place within the district, nearer to the place where the offenses are said to be committed than the place appointed by law for the stated session, and gives the same discretionary power to the circuit and district judge when the supreme court is not in session. Construing the provision of the law here cited as providing for the holding of special sessions near the place of the commission of the offenses only, it still affords a remedy. Add to this the general power of all judges, state and federal, to place offenders under recognizance to keep the peace and bind them over to appear, and the powers of the court to deal with offenders violating its orders would seem to be adequate, though it must be confessed somewhat roundabout in districts where the courts are not always in session. A regard for individual rights, and the presumption that the law will be obeyed, may have intentionally left the remedies as we find them.

A somewhat careful examination of the law of contempt, as made by legislation and the judges, discloses that no effective limitation to the discretionary powers of the courts has been prescribed. It is necessary, perhaps, to leave to judges such powers in the punishment of crimes, but limits to them should be, and are nearly always, prescribed. It ought to be so in cases of contempt. These suggestions are made, not because the cases before me present any particular difficulty, but because of the onerous duties imposed on judges in vesting them with unlimited discretionary powers. That the strikers in these cases violated the orders of court by interfering with its management of the road, there can be no doubt. Their escape from merited punishment is due to the law.

The conclusions reached are that the proceedings in contempt are criminal in their nature; that they must be had in court, and, under the law dividing the Western district of Missouri, in the division in which the offense was committed. The order will be that all of the defendants be discharged, principals and sureties on recognizances be released, and that the sentences heretofore passed be held for nought.