In re NEVITT et al.

(Circuit Court of Appeals, Eighth Circuit. August 28, 1902.)

No. 29.

1. HABEAS CORPUS—FUNCTION—CHALLENGE TO JURISDICTION—REVIEW OF ERRONEOUS RULINGS.

The writ of habeas corpus challenges only the jurisdiction or power of the court to commit the prisoner, and it may not be invoked to review or avoid the erroneous rulings or judgment of a court of competent jurisdiction.

2. COMPROMISES FAVORED BY THE LAW.

It is the policy of the law to promote and sustain the compromise of disputed claims, and the fact that a judge advises the compromise of litigation pending before him does not disqualify him from deciding the questions it presents.

3. CONTEMPTS—POWER TO PUNISH—FEDERAL COURTS—INHERENT CHARACTER.

The power to punish for contempt and disobedience of their judgments, orders, writs, and processes is an attribute of the federal courts, as inherent and indispensable as judges. It was vested in them, the moment they came into existence, by the grant to them of all the judicial power of the nation by section 1, art. 3, of the constitution.

4. CONTEMPTS—CLASSES.

Proceedings for contempts are of two classes,—criminal or punitive, and civil, remedial, or coercive. The former are conducted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders. The latter are instituted to protect, preserve, and enforce the rights of private parties, and to compel obedience of the orders, judgments, and decrees of the courts made to enforce the rights and remedies to which the courts have decided that such parties are lawfully entitled.

5. CIVIL CONTEMPT—REFUSAL TO LEVY TAX TO PAY JUDGMENT.

The commitment of the judges of a county court to prison until they comply with a mandamus which directs them to levy a tax to pay a judgment against their county is not criminal, but is civil, remedial, and coercive in its nature, because it is of the character of an execution to collect the judgment, enforce the rights, and administer the remedies of the plaintiff in the suit.

6. CIVIL CONTEMPT—PRESIDENT HAS NO POWER TO PARDON.

Proceedings to compel by fine or imprisonment obedience to such a mandamus, or to coerce obedience to an order of a court made in a civil suit to enforce the rights or administer the remedies to which a court of competent jurisdiction decides that a party to the suit is entitled, are not executions of the criminal laws of the land, but proceedings to secure suitors their legal rights, and the president is without authority, under the grant to him of power to issue reprieves and pardons for offenses against the United States, to relieve from imprisonment to enforce obedience to, or to pardon for disobedience of, such a mandamus or order, because he may not release or destroy the legal rights or remedies of private citizens.

---

¶ 1. See Habeas Corpus, vol. 25, Cent. Dig. §§ 24, 25, 81, 82.

7. CRIMINAL CONTEMPTS—POWER OF PRESIDENT TO PARDON.
Suggestions relative to this power, but no decision of the question of its existence.

8. CONTEMPTS—EACH COURT HAS EXCLUSIVE JURISDICTION OF ITS OWN.
Each court has exclusive jurisdiction of contempts of its authority, and of disobedience of its orders and processes, and no other court may lawfully admit to bail or relieve or discharge a prisoner fined or committed for disobedience of its orders, writs, or processes by a court which had jurisdiction to make the orders and to issue the commitment.

9. CIVIL CONTEMPTS—COURT WHICH COMMITS MAY MODIFY.
The court which commits or fines to enforce obedience to its orders, for the purpose of securing the rights of suitors, has plenary power to modify, suspend, or relieve from the fine or imprisonment, either in the original case or in a proper auxiliary proceeding.

(Syllabus by the Court.)

On Petitions for a Writ of Habeas Corpus.

George C. Worth, for petitioners.

Before SANBORN, Circuit Judge, and LOCHREN, District Judge.

SANBORN, Circuit Judge. This case comes before the court upon the petition of two of the judges of the county court of St. Clair county, in the state of Missouri, and upon the petition of their counsel for the issue of the writ of habeas corpus to relieve these judges from an imprisonment which they are enduring until such time as they shall comply with a mandamus of the United States circuit court for the Western division of the Western district of Missouri, which directs these judges to levy a tax to make a partial payment upon a judgment which Joseph M. Douglas recovered against the county of St. Clair on February 9, 1894, and to make partial payments upon other judgments of like character based upon certain bonds of the county of St. Clair.

A writ of habeas corpus cannot be made to perform the office of a writ of error. It may not be invoked to review or avoid an erroneous judgment of a court of competent jurisdiction. It challenges the jurisdiction of the court alone, and is available only to relieve a prisoner from the restraint imposed by a judgment or order that is absolutely void on the ground that the court was without the power to make it. In re Debs, 158 U. S. 564, 600, 15 Sup. Ct. 900, 39 L. Ed. 1092; Ex parte Watkins, 3 Pet. 193, 7 L. Ed. 650; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; Ex parte Terry, 128 U. S. 289, 305, 9 Sup. Ct. 77, 32 L. Ed. 405; In re Swan, 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207; U. S. v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631; Deming v. McClaughry, 51 C. C. A. 349, 113 Fed. 639, 649; In re Reese, 47 C. C. A. 87, 107 Fed. 942, 948; Ex parte Buskirk, 72 Fed. 14, 21, 18 C. C. A. 410, 417, 25 U. S. App. 613, 615; Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216; Ex parte Fisk, 113 U. S. 713, 718, 5 Sup. Ct. 724, 28 L. Ed. 1117; Dynes v. Hoover, 20 How. 81, 83, 15 L. Ed. 838; Ex parte Reed, 100 U. S. 13, 23, 25 L. Ed. 538; Ex parte

Coy, 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274; Rose v. Roberts, 99 Fed. 948, 40 C. C. A. 199. In view of this universal rule, the facts and the law which condition the merits of the controversy over the validity of the bonds which form the bases of the judgments against the county and the foundation of the mandamus and commitments to enforce those judgments are immaterial to the questions which these petitioners present, and it would be useless to recite or review them here. The curious will find a demonstration of the proposition that the circuit court could have rendered no other judgment in this case, and that it could not have done less than to issue the mandamus and the commitments without a defiant disregard of the settled law of the land and of the controlling decisions of the supreme court upon the questions before it in the cases of In re Copenhaver (C. C.) 54 Fed. 660; Henry Co. v. Nicolay, 95 U. S. 619, 24 L. Ed. 394; Scotland Co. v. Thomas, 94 U. S. 682, 24 L. Ed. 219; Trust Co. v. Debolt, 16 How. 416, 432, 14 L. Ed. 997; Gelpcke v. City of Dubuque, 1 Wall. 206, 17 L. Ed. 520; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161; Bronson v. Kinzie, 1 How. 317, 11 L. Ed. 143; Louisiana v. City of New Orleans, 102 U. S. 206, 26 L. Ed. 132; Flagg v. City of Palmyra, 33 Mo. 440; Smith v. Clark Co., 54 Mo. 71–74; Macon Co. Case, 41 Mo. 453; State v. Sullivan Co. Ct., 51 Mo. 522; and State v. Greene Co., 54 Mo. 540.

The only question for our consideration, therefore, is whether or not the petitions state any facts which show, or tend to show, that the circuit court was without jurisdiction to render the judgments or to issue the mandamus or the commitments. The only judgment specified in the petition under which it is alleged that the mandamus issued is a judgment of Joseph M. Douglas against the county of St. Clair, rendered on February 9, 1894, and for the sake of brevity this will be the only judgment mentioned in the discussion of the questions presented in this case. It is not claimed that the court below did not have the general power to render this judgment and to issue the mandamus and the commitments thereunder, nor that the parties to the action or its subject-matter were without the jurisdiction of the circuit court. The only ground upon which it is asserted that the judgment, the mandamus, or the commitments are void is that the judge who presided in the circuit court was disqualified from acting as such when these proceedings were taken. It is conceded that the better rule, supported by the great weight of authority, is that the judgments and orders of courts composed of disqualified judges are void. Deming v. McClaughry, 51 C. C. A. 349, 113 Fed. 639, 651; Case v. Hoffman, 100 Wis. 314, 356, 75 N. W. 945, 44 L. R. A. 728; Oakley v. Aspinwall, 3 N. Y. 547, 552; Low v. Rice, 8 Johns. 409; Clayton v. Per Dun, 13 Johns. 218; Edwards v. Russell, 21 Wend. 63; People v. Connor, 142 N. Y. 130, 133, 36 N. E. 807; Chambers v. Clearwater, *40 N. Y. 310, 314; Sigourney v. Sibley, 21 Pick. 101, 106, 32 Am. Dec. 248; Gay v. Minot, 3 Cush. 352; Hall v. Thayer, 105 Mass. 219, 224, 7 Am. Rep. 513; Railway Co. v. Summers, 113 Ind. 10, 17, 14 N. E. 733, 3 Am. St. Rep. 616; Ochus v. Sheldon, 12 Fla. 138; Chambers v. Hodges, 23 Tex. 112;

Gains v. Barr, 60 Tex. 676, 678; Templeton v. Giddings (Tex. Sup.) 12 S. W. 851. But what constitutes disqualification? Generally speaking, the answer may be: Interest in the subject-matter of the litigation, relationship to one or more of the parties to it, and statutory prohibitions. For which of these causes do the averments of the petitions charge that the judge who tried this case was disqualified? The judgment in favor of Douglas was rendered in February, 1894. The mandamus and the commitments have issued since that date. The allegations of the petition are that before 1888, when he went on the bench of the federal court, and in the year 1860, one of the judges who presided when this judgment was rendered, and the judge who issued the mandamus and the commitments, was named in the act of the legislature of the state of Missouri as one of fourteen members of the board of directors of the railroad company to which the bonds were subsequently issued; that he qualified as such director; that he was active and instrumental in procuring the issue of the bonds, and in the business of the company, until 1870, when it transferred its franchises to another corporation; that he was one of the legal advisers of the parties to the bonds down to the year 1888; that he was for many years prior to that date counsel for the obligor in the bonds (54 Fed. 660, 662); that since he became a federal judge he has been engaged in a systematic effort to induce the parties to this litigation to compromise it; and that certain taxpayers of St. Clair county have brought a suit in equity in one of the courts of the state of Missouri against him and other parties, in which the only relief that they demand against him is that he answer certain questions and produce certain evidence. These are all the averments of the petition in support of the charge of disqualification.

It is customary, desirable, and proper for every member of the judiciary to be anxious and eager to escape the hearing and decision of every case in which he has either interest or bias, to avoid not only the evil of disqualification, but even the appearance of such evil. But there is nothing in the facts stated in these petitions that discloses a departure by the judge who conducted this case from this exacting rule of propriety, much less from the more liberal rule of the law. There is no allegation in these petitions that he ever at any time owned any of the bonds or any interest in them. There is no averment that at any time after the year 1888 he acted, or was in any way interested, as counsel, attorney, or otherwise, in any of the bonds, or in the success or failure of any of the parties to this litigation. There is no charge that he was ever the attorney, counsel, or adviser of either of the parties in the action of Douglas against the county of St. Clair, in which the proceedings here challenged were taken. Stripped of its verbiage, the averment of disqualification is that prior to 1870 this judge assisted the railroad company to procure the bonds, that prior to 1888 he assisted the county as one of its counsel in its attempt to defeat them in the courts, and that since he went on the bench he has endeavored to persuade the parties to the controversy to compromise the litigation. When the judgment was rendered and when the subsequent proceedings were taken he was not acting as a judge in his own cause, or in any cause in

which he then had or had ever had any interest, direct or indirect. He was not of kin to any of the parties. He was not the attorney or counsel of any of them, and he never had been the attorney or counsel of either of them in the action of Douglas against the county. A judge is not disqualified to hear and determine a lawsuit because in some other action between other parties, in which the same or similar questions of law or of fact were involved, he was of counsel for one of the litigants. If he were, the cases would be few in which a judge, who was an active practitioner before he ascended the bench, would not be disqualified, and the best qualification for judicial position would be idleness and ignorance. The judge who rendered this judgment and issued this mandamus and these commitments was not forbidden by any interest, by the policy of the law, or by any statute from deciding the questions which the cases presented and from issuing the writs to which the plaintiff was entitled. On the other hand, the acts of congress, his oath of office, the decisions of the supreme court to which we have adverted, and the law applicable to the case had imposed upon him the unavoidable duty to render the judgment and to issue the writs at the prayer of the plaintiff. There was nothing in his connection with the old railroad company prior to 1870, nothing in his relation with the county or the parties interested in the bonds prior to 1888, to excuse him from the discharge of this duty, and nothing in his discharge of it incompatible with the ideals of judicial integrity and propriety, while his earnest and systematic endeavors to effect a compromise of this controversy bespeak for him emphatic commendation. The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims. It loves peace, hates broils and dissensions, and discourages the prolongation of litigation. Railway Co. v. Wilcox, 116 Fed. 913. The petitions disclose no disqualification of this judge, no lack of jurisdiction of the circuit court, and no invalidity in the judgment, the mandamus, or the commitments, and hence no ground for the issue of the writ of habeas corpus, or for the admission of the judges of the county court to bail. One who is legally committed for a disobedience of its orders by a court of competent jurisdiction cannot be lawfully discharged or admitted to bail by any other court, because each court has exclusive jurisdiction of its own contempts. Brass Crosby's Case, 3 Wils. 188, 198, 199, 204; In re Debs, 158 U. S. 564, 594, 15 Sup. Ct. 900, 39 L. Ed. 1092; Case of Yates, 4 Johns. 345, 369, 370; Yates v. Lansing, 9 Johns. 396, 423, 6 Am. Dec. 290; State v. Tipton, 1 Blackf. 166; Lockwood v. State, 1 Ind. 161; Ex parte Bradley, 7 Wall. 364, 372, 19 L. Ed. 214; Williamson's Case, 26 Pa. 9, 15, 67 Am. Dec. 374.

The petition of the counsel for the judges of the county court of St. Clair county prays that the judge of the circuit court which rendered the judgment and issued the writ of mandamus and commitment may be enjoined from the further exercise of his judicial functions in this case on account of the alleged disqualification which has been considered. That prayer must be denied for the same reasons which have compelled the refusal to issue the writ of habeas corpus.

There is another phase of the petition of the counsel for these judges to which he has earnestly invoked our careful consideration. It is this: He alleges that he verily believes that the contempt of which these judges stand convicted is a "distinct and substantive offense against the United States," and that as such it falls clearly within the pardoning power of the president, and he prays that the proceedings may be stayed in the courts and that these judges may have leave to apply to the president for their release. He rests his claim to this relief upon the opinion and action of Judge Blatchford in the Case of Mullee (in the year 1869) 17 Fed. Cas. 968, 7 Blatchf. 23, and upon Fischer v. Hayes (C. C.) 6 Fed. 63. In that case Mullee had been fined in the sum of $2,500, to be paid to the plaintiffs in the suit, for a willful and persistent disobedience of the order and injunction of the court, and had been committed until the fine should be paid. After he had been imprisoned for some time he applied to Judge Blatchford for his discharge on the ground that he was unable to pay the fine, and the judge held that the circuit court had no jurisdiction to relieve him from it, because the order committing him was criminal, and not civil, in its nature, and because his only remedy was an application to the president for his pardon under article 2, § 2, subd. 1, of the constitution, which invests the executive with power "to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." In Hayes v. Fischer, 102 U. S. 121, 26 L. Ed. 95, a writ of error to review a similar order of commitment of another defendant for a like disobedience in the same case, the supreme court expressed a significant doubt whether the order and injunction were not mere interlocutory directions in a civil suit. Mullee applied to the president for his pardon, and his petition was denied. Thereupon Judge Blatchford abandoned his theory that a commitment for a failure to obey the order of a court to pay money or to do any other act to which the court has adjudged the opposite party in the suit entitled was a criminal, and not a civil, proceeding, and admitted the defendant to bail, an act which he could not have done if the order of commitment had been criminal in its nature. Fischer v. Hayes (C. C.) 7 Fed. 96; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 811. Since that day there seems to have been no substantial dissent from the rule and practice that an order committing a defendant for contempt in refusing to pay a fine or to obey an order made in a civil suit for the purpose of enforcing the rights and administering the remedies of a party to the action is civil and remedial, and not criminal, in its nature; that it does not fall within the pardoning power of the president, because it is not an execution of the criminal laws of the land; and that it is always within the power and subject to the modification, suspension, or discharge of the court which has made it, and of that court alone, either in the original case or in an appropriate auxiliary proceeding. City of New Orleans v. New York S. S. Co., 20 Wall. 387, 392, 393, 22 L. Ed. 354; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810; In re Debs, 158 U. S. 564, 596, 599, 15 Sup. Ct. 900, 39 L. Ed. 1092. In the last case Mr. Justice Brewer, expressing the unanimous opinion of the supreme court, said:

"In brief, a court, enforcing obedience to its orders by proceedings for contempt, is not executing the criminal laws of the land, but only securing to suitors the rights which it has adjudged them entitled to."

It is difficult to perceive how any other conclusion can be reached. The petition of the judges of St. Clair county avers that "both of your petitioners are now in prison because they declined to levy a tax in partial payment of said judgment (the judgment of Douglas against the county of St. Clair) and other like judgments." They are then in prison for the purpose of coercing them to comply with a lawful order of the court made in a civil action to enforce the legal right of the plaintiff. A court of competent jurisdiction has decided that Joseph M. Douglas is entitled to recover the amount specified in his judgment from the county of St. Clair. He is entitled to an execution to collect this judgment. The writ of mandamus directed to the members of the county court of that county is the legal substitute for the writ of execution upon judgments against private parties. Lafayette Co. v. Wonderly, 92 Fed. 313, 316, 34 C. C. A. 360, 363; Dempsey v. Oswego Tp., 51 Fed. 97, 99, 2 C. C. A. 110, 112. The plaintiff in this judgment has the same legal right to the issue and enforcement of that mandamus that he would have to the issue and levy of a writ of execution on a judgment in his favor against a private individual. That mandamus has been issued, but the members of the county court refuse to obey it. This mandamus is the plaintiff's only remedy. He has the legal right to its execution, to the levy of the taxes it commands, and to the exercise of all the power of the court which issued it to compel its execution. He has invoked that power, and the court has committed the judges of the county court to the jail until they comply with its order for the purpose of securing to the plaintiff, Douglas, the right to which it has adjudged him entitled. Can it be that there is any appeal from the decision of a federal court in a civil action upon the rights of the parties to it, or from the lawful orders it makes to secure those rights to the executive department of the national government? May the president review and reverse or modify the decisions or orders of a court of competent jurisdiction, made in a civil action, to secure or enforce the rights or the legal remedies of the private parties to the suits before it? If, in an action for specific performance, a court orders a defendant to surrender title deeds in his possession, and commits him until he does so, may the executive review the case, relieve the defendant from imprisonment, and thus reverse the effect of the decision of the court, and practically hold that the plaintiff is entitled to no relief? If a defendant in equity or a bankrupt is found to have trust funds in his possession, and is ordered by a court of competent jurisdiction to pay them over to the cestui que trust, and committed until he does so, may the executive department relieve from this commitment, and thus make the order and decree of the court as "idle as a painted ship upon a painted ocean"? If a defendant in a suit in equity is fined for the benefit of the plaintiff, or is imprisoned to coerce him to obey an injunction, may the president relieve from the fine or imprisonment, and thus render the decision and order of the court nugatory, and the complainant remediless? The plaintiff

in this case has a right to the recovery of the amount of his judgment from the county of St. Clair. He has but one remedy to enforce that right,—the compulsory power of the court to enforce obedience to its mandamus. The court whose duty it was to consider and determine this question has decided that he is lawfully entitled to this remedy. May the president review that decision, and relieve the petitioners from the coercive power of the court, and thus deprive the plaintiff of his legal remedy and render his judgment nugatory? These questions seem to us susceptible of but one true answer.

The power of the national courts to enforce obedience, and to punish disobedience, of their orders, is not derived from the acts of congress (Rev. St. § 725), but from the grant to them of all the judicial power of the nation by section 1 of article 3 of the constitution, which declares that "the judicial power of the United States shall be vested in one supreme court and in such inferior courts as the congress may from time to time ordain and establish." The grant of the judicial power of the United States to these courts ex vi termini vested them with authority to enforce obedience to their orders and to punish disobedience and contempt of their authority by fine and imprisonment, because this authority is an attribute of judicial power as inherent and indispensable as a judge. "The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings and to the enforcement of the judgments, orders, and writs of the courts and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." Ex parte Robinson, 19 Wall. 505, 506, 22 L. Ed. 205. "The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in courts of chancery and other superior courts as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land within the meaning of Magna Charta and of the twelfth article of our declaration of rights." Cartwright's Case, 114 Mass. 230, 238. "The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge. It is a power inherent in all courts of record and co-existing with them by the wise provisions of the common law. A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments, or decrees against the recusant parties before it, would be a disgrace to the legislation and a stigma upon the age which invented it." Watson v. Williams, 36 Miss. 331, 341. "But the power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to

deprive the proceeding of half its efficiency." In re Debs, 158 U. S. 594, 15 Sup. Ct. 900, 39 L. Ed. 1092.

The fact that the circuit courts were created by act of congress, and that the act of March 2, 1831, prescribed the classes of cases in which they may punish for contempt (Rev. St. § 725), is not overlooked, nor is it material to the discussion in this case, because the contempt here under consideration falls far within the last class mentioned in the act of congress, and the power of the court below to compel obedience to its lawful orders and to punish their disobedience by any party to a suit within it was as inherent, essential, and plenary as is that power in the supreme court of the United States. In this state of the law and of the constitutional grant, how can it be said that the question whether obedience to the orders and decrees of the judicial department of the government, made to enforce the rights of litigants before it, is determinable by the decision or subject to the discretion of the executive department? The constitution granted this power to compel obedience to their injunctions, orders, and processes to the federal courts, when it granted to them all the judicial power of the nation. This power is essential to their existence as judicial tribunals. Without it they would be without the means to enforce their orders, without the means to protect themselves against the defiance and the assaults of the reckless and the criminal, without respect, without dignity, and without usefulness.

The contention of counsel for the petitioners and the authorities to which he calls our attention suggest a very interesting question, the answer to which is not essential to the decision of this application, —the question whether or not the president has the power to pardon those committed or fined for criminal contempts; those fined or imprisoned to vindicate the dignity and to preserve the power of the court, or to punish the disobedience of its direction, as distinguished from those fined and imprisoned for civil contempts, as in the case before us; those fined or imprisoned for the purpose of protecting or enforcing the private rights and remedies of parties to civil suits. If the president has the power to pardon those who are committed for criminal contempts of the authority of the courts, and thus to relieve them from fines or imprisonments inflicted to punish them for their disobedience, this immemorial attribute of judicial power is thus practically withdrawn from the courts and transferred to the executive; for he may pardon whom he will, and he would have the power to so exercise this authority as to deprive the courts of all means to punish for disobedience of their orders. Is there any provision of the constitution of the United States which grants this inherent and essential attribute of judicial power, or the authority to control its exercise, to the executive? Congress has undoubted authority to punish recalcitrant witnesses for contempt of its authority. The offenses of such witnesses are as much offenses against the United States as the offenses of witnesses, jurors, or parties who disobey the orders, writs, or processes of the courts. May the president pardon such witnesses who are committed for the purpose of punishing them for the disobedience of such orders and processes, and this deprive congress and the courts of the ability to punish for

disobedience of their lawful orders and processes? If a court fines or imprisons a juror because he refuses to obey its mandate when summoned, or because he refuses to act when he appears, may the president immediately pardon him, and thus relieve him from all punishment for disobedience of the order of the court? May he pardon all jurors for all disobedience of the mandates of the courts, and thus practically deprive the courts of the power to summon jurors? If riotous persons are fined or imprisoned for disturbing, defying, and preventing the proceedings of a court, may the president pardon them, and thus deprive the court of the power to continue its sessions and to discharge its functions? In other words, has the executive the power, if he chooses to exercise it, of drawing to himself all the real judicial power of the nation which the constitution vested in express terms in the courts, by means of his supreme control of the inherent and essential attribute of that power,—the authority to punish for disobedience of the orders of the courts? These questions seem to suggest their answers. In re Chadwick (Mich.) 67 N. W. 1071, 1075, 1076; Taylor v. Goodrich (Tex. Civ. App.) 40 S. W. 515, 523. No authoritative decision of any court, excepting only the opinion of Judge Blatchford in Re Mullee, which was, as we have shown. subsequently abandoned, has been called to our attention which answers any of these questions in the affirmative. There is an opinion of Attorney General Gilpin, in 3 Op. Attys. Gen., at page 622, that the president has power to relieve a person of a fine of $400 imposed upon him for an affray in the presence of the court, and an opinion of Attorney General Mason in 4 Op. Attys. Gen., at page 458, that the president may pardon defaulting jurors of fines imposed for a failure to obey the process of the court. But these opinions are neither controlling nor persuasive, because they contain no discussion and give no consideration to the controlling fact which must in the end condition and determine the decision of these questions, the fact that the judicial power of the United States is not derived from the king, as it was in England, or from the president, but is granted by the people by means of the constitution, in its entirety, including the inherent and indispensable attribute of that power, the authority to punish for disobedience of their orders, to the federal courts, free from the control or supervision of the executive department of the government, to the same extent that the entire executive power of the nation is vested in the president, free from the supervision or control of the courts. Const. art. 2, § 1; Id. art. 3, § 1.

The argument that punishment for contempt of court falls within the power of the president to grant pardons for offenses against the United States because the supreme court said in Ex parte. Kearney, 7 Wheat. 38, 43, 5 L. Ed. 391, a case in which a writ of habeas corpus to relieve a petitioner from punishment for disobeying the order of an inferior court was denied, that the proceeding to punish for that contempt was a criminal case, and in City of New Orleans v. New York S. S. Co., 20 Wall. 387, 392, 22 L. Ed. 354, an appeal from a decree for an injunction, for damages, and for the imposition of a fine for disobedience of a preliminary injunction, that the imposition of the fine was a judgment in a criminal case and without its juris-

diction, is neither cogent nor convincing, for the reason that neither the questions which have been suggested here nor the constitution and the acts of congress which condition their determination were there presented, argued, or considered. For the same reason expressions of the lower courts of like character, made in their deliberation upon and decision of other issues, as in U. S. v. Atchison, T. & S. F. Ry. Co. (C. C.) 16 Fed. 853; U. S. v. Berry (C. C.) 24 Fed. 780, 781; In re Ellerbe (C. C.) 13 Fed. 532; Kirk v. Manufacturing Co. (C. C.) 26 Fed. 501, 505; Williamson's Case, 26 Pa. 9, 67 Am. Dec. 374; Searls v. Worden (C. C.) 13 Fed. 717; and Ex parte Gould, 99 Cal. 362, 33 Pac. 1112, 21 L. R. A. 751, 37 Am. St. Rep. 57,—are entitled to little, if any, consideration in the determination of these questions. It is not, however, necessary to a decision of the application before us, nor is it our purpose, to here decide whether or not criminal contempts, contempts instituted solely for the purpose of vindicating the dignity of the courts, preserving their power, and punishing disobedience of their orders, fall within the pardoning power of the executive. That question has been presented and pressed upon our consideration by the argument and the authorities of counsel for the petitioners, and it has been adverted to, and some of the considerations which in our opinion must control its ultimate decision have been suggested, that it might be clear that in what is said in this opinion this court neither intimates nor decides that there is or ought to be any authoritative decision that the executive department of the government has been vested with any such power.

The decision of this application rests upon another and upon an impregnable position. This is not a criminal, but a civil, contempt,— a proceeding instituted for the purpose of protecting and enforcing the private rights and administering the legal remedies of the judgment plaintiff, Douglas; and whatever the authority of the president may be to pardon for a criminal contempt, he is, upon principle and upon authority, without the power to relieve from either fine or imprisonment imposed in proceedings for contempts of this character. He has no more power to deprive private citizens of their lawful rights or legal remedies without compensation than have the courts or the congress.

Proceedings for contempts are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. Thompson v. Railroad Co., 48 N. J. Eq. 105, 108, 21 Atl. 182; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652; People v. Court of Oyer & Terminer, 101 N. Y. 245, 247, 4 N. E. 259,

54 Am. Rep. 691; Phillips v. Welch, 11 Nev. 187, 190; State v. Knight, 3 S. D. 509, 513, 54 N. W. 412, 44 Am. St. Rep. 809; People v. McKane, 78 Hun, 154, 160, 28 N. Y. Supp. 981, 4 Bl. Comm. 285; 7 Am. & Eng. Enc. Law, 68. A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings. This is the nature of the case under consideration. These petitioners are imprisoned until they comply with the order of the court that they levy the tax to pay in part the judgment of the plaintiff, Douglas, against this county. This plaintiff has the legal right to the enforcement of this order by the coercive power of the court. The power of the president to grant reprieves and pardons of offenses against the United States does not extend to him the authority to release or destroy the civil rights of private individuals, and hence cannot authorize him to deprive this plaintiff of his legal right to the enforcement of his mandamus by the commitment of the prisoners until they comply with the lawful order of the court. 13 Peters. Abr. p. 78; 3 Co. Inst. c. 105, pp. 236, 238; 4 Bl. Comm. 285; Jones v. Shore's Ex'rs, 1 Wheat. 471, 474, 4 L. Ed. 136; Van Ness v. Buel, 4 Wheat. 74, 4 L. Ed. 516; U. S. v. Lancaster, 4 Wash. C. C. 66, 26 Fed. Cas. 859; 5 Op. Attys. Gen. 532, 542.

Petersdorf in his Abridgment (volume 13, at page 78) says:

"The king's pardon cannot be considered a legal discharge of an attachment for nonpayment of costs or nonperformance of an award; for, though such attachment be carried on in the shape of criminal process for a contempt of court, yet it is in effect and substantially a civil remedy or execution for a private remedy."

Blackstone, in reciting the various contempts punishable by the courts, says:

"(6) Those committed by parties to any suit, or proceeding before the court, as by disobedience to any rule or order made in the progress of a cause, by nonpayment of costs awarded by the court upon a motion, or by nonobservance of awards duly made by arbitrators or umpires, after having entered into a rule for submitting to such arbitration. Indeed the attachment for most of this species of contempts, and especially for nonpayment of costs and nonperformance of awards, is to be looked upon rather as a civil execution for the benefit of the injured party, though carried on in the shape of a criminal process for a contempt of the authority of the court; and therefore it hath been held that such contempts, and the process thereon, being properly the civil remedy of individuals for a private injury, are not released or affected by a general act of pardon." 4 Bl. Comm. 285.

In Jones v. Shore's Ex'rs, 1 Wheat. 462, 4 L. Ed. 136, in U. S. v. Lancaster, 4 Wash. C. C. 66, 26 Fed. Cas. 859, and in 5 Op. Attys. Gen. 532, it was held that the president had no authority under his pardoning power to release that portion of fines or penalties for violations of law which inured to the benefit of private indi-

viduals. And how can this be otherwise? A pardon is a grant, a deed. But a deed does not and cannot convey that which the grantor has never had. If it were conceded that the president by his pardon could grant to the petitioners all the right and interest of the United States in these proceedings for contempt, that grant would avail nothing here. The right to the enforcement of this mandamus by these proceedings for contempt is not vested in the United States, or in the president, and therefore they cannot grant or release it. It is vested in the plaintiff in this judgment, Joseph M. Douglas. It is the right to the only execution, the only remedy, which the law vouchsafes to him for the collection of his judgment, and no department of the government, executive, legislative, or judicial, can lawfully take, release, or destroy it without paying or securing to him just compensation for his property; for this is his private property.

The questions which these petitions present involve the liberty of the citizen and go to the very foundation of civil government; for justice is the end of all government, and if the courts which are instituted to determine what justice is between man and man may not enforce the private rights to which they find the litigants before them entitled, the great purpose of government will be unattained and our republican system will prove to be a lamentable failure. Time, patience, and deliberation have not been spared in the examination and consideration of these questions and in a faithful endeavor to reach their just and true solution. There are prayers of the petitioners which have not been recited in this opinion, but the conclusions which have been reached upon those to which reference has been made are decisive of every question which the petitions present, and it would be useless to extend an opinion already too long by farther recitals.

The conclusion is that the proceedings for contempt under which the petitioners are held imprisoned until they comply with the mandamus of the court, which directs them to levy taxes to partially pay the judgments of Joseph M. Douglas and others against their county, is not criminal in its nature, but is civil, remedial, and coercive, instituted and maintained for the purpose of enforcing the private rights of these judgment creditors to the collection of their judgments; that the petitioners are enduring imprisonment under a lawful commitment of a court of competent jurisdiction for a failure to obey a legal order which that court had jurisdiction to make; that the president has no power to relieve them from a compliance with that order, or to release them from the commitment issued to coerce them to obey it, because he may not deprive a private citizen of his legal rights and remedies; that this court has no power to review or modify, by means of the writ of habeas corpus, the action of the circuit court, which had plenary jurisdiction of these parties and of the subject-matter; that the circuit court which issued the commitment is the sole judge of, and has exclusive control over, charges for contempts and disobedience of its orders, subject only to reviews by appeals and writs of error prescribed by the acts of congress; and that the circuit court, whose orders the judges of the

county court are disobeying, has ample power to grant to them any relief to which they are or may become entitled under the laws of the land and in view of the rights of the other parties to this litigation. City of New Orleans v. New York S. S. Co., 20 Wall. 387, 393, 22 L. Ed. 354; In re Debs, 158 U. S. 564, 566, 599, 15 Sup. Ct. 900, 39 L. Ed. 1092. The result is that the prayers of the judges of the county court of St. Clair county must be denied. But they are not remediless. They are imprisoned only until they comply with the orders of the court, and this they may do at any time. They carry the keys of their prison in their own pockets. Governments are founded to administer justice. Courts are established to determine the rights and remedies of litigants by peaceable decisions under the law, instead of by the wager of battle. They are not infallible, but no better method of determining adverse claims has yet been devised. The court whose duty it was to hear and determine this case was left no alternative, under the controlling decisions of the supreme court, but to render the judgment and to issue the mandamus which these judges are disobeying, when the plaintiffs in these judgments prayed for that action, because under the law and under those decisions these plaintiffs had the legal right to that relief. It was the duty of the circuit court, and not that of these county judges, to determine whether or not they should levy this tax for the collection of these judgments, and the responsibility for that levy rests upon that court or upon the supreme court of the United States, whose decisions rendered its action imperative, and not upon the judges of this county court. Their duty as citizens and officers will be discharged when they comply with the mandate of the circuit court. Good citizenship demands the subordination of all our wills and acts to the judgments and orders of the courts which we have established to determine and enforce the rights of all our citizens, even though our private judgment does not always coincide with that of the courts which determine our rights and administer our remedies. The remarks of Judge Black in considering the commitment of Passmore Williamson for an indefinite time for a failure to obey the order of a court are not inapplicable to the situation in the case in hand. He said:

"But it is not illegal, nor contrary to the usual rule in such cases. It means commitment until the party shall make proper submission. 3 L. Raym. 1108; 4 Johns. 375. The law will not bargain with anybody to let its courts be defied for a specific term of imprisonment. There are many persons who would gladly purchase the honors of martyrdom in a popular cause at almost any given price, while others are deterred by a mere show of punishment. Each is detained until he finds himself willing to conform. This is merciful to the submissive, and not too severe upon the refractory. The petitioner, therefore, carries the key of his prison in his own pocket. He can come out, when he will, by making terms with the court that sent him there. But if he chooses to struggle for a triumph,—if nothing will content him but a clean victory or a clean defeat,—he cannot expect us to aid him. Our duties are of a widely different kind. They consist in discouraging, as much as in us lies, all such contests with the legal authorities of the country."

The prayers of the petitioners must be denied, and their petitions must be dismissed. It is so ordered.