CRESCENCIO ESPINOSA, Petitioner, v. CASTO RAMÍREZ, WARDEN OF THE DISTRICT JAIL OF HUMACAO, Respondent.

No. 495. Argued December 6, 1951.—Decided December 17, 1951.

*Santos P. Amadeo, Rafael V. Pérez Marchand, Cruz Ortiz Stella, Juan Hernández Vallés, Agustín Pérez Rodríguez,* and *Juan Marcano Ortiz,* for petitioner. *Víctor Gutiérrez Franqui, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for respondent.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

A new habeas corpus proceeding has been brought to this Court by Crescencio Espinosa alleging that he is illegally deprived of his liberty because the judgment which was rendered in a contempt proceeding ordering his commitment—for an indefinite term until he complied with the judgment ordering him to pay to his alleged natural daughter Ruth Pérez the weekly allowance of $5 for support claimed in a civil action—is null and void and was entered without jurisdiction (1) because it imposes a cruel and unusual punishment in violation of paragraph 12, § 2 of our Organic Act and of the Eighth Amendment of the Constitution of the

United States and (2) because the trial court had not exhausted other remedies in law to enforce the disobeyed order, before ordering his indefinite imprisonment.

The background of the instant case is elaborately recited in our decision in *Espinosa* v. *Ramírez, Warden,* 71 P.R.R. 10: Espinosa was sentenced by the District Court of Humacao on May 31, 1949, in a civil action for support, to pay to his alleged natural daughter, Ruth Pérez, the weekly allowance of $5. The defendant refused to comply with the judgment and at the request of the plaintiff, mother of the minor, he was summoned to show cause why he should not be punished for contempt. After plaintiff introduced her evidence, the defendant stated that he would introduce none and that he had not deposited nor intended to deposit the weekly allowances past-due. In view of this, the court found him guilty of civil contempt and sentenced him on August 1, 1949 to imprisonment in the district jail for an indefinite term until he complied with the judgment in the action for support.

On August 8, 1951, after vain efforts were made to set him free, the District Court of Puerto Rico, Humacao Section, granted a petition for a habeas corpus on the ground that the warrant of commitment by virtue of which petitioner had been imprisoned was signed by the Clerk of the Court and not by the Judge as required by law. On that same date this Court issued a new warrant, according to law, and the petitioner was again committed for an indefinite term until he complied with the terms of the judgment in the action for support.

We need not stop to consider the ground on which petitioner bases the lack of jurisdiction of the court to sentence him, for civil contempt, to indefinite imprisonment until he performed the affirmative act requested in the judgment for support, because before sentencing him other adequate remedies at law to enforce the judgment were not exhausted. At the hearing of the appeal it was indicated

that these other remedies could be the enforcement by attachment of any salaries, rents, or property subject to attachment, and its sale at public auction whenever proper. This same question has been settled in this jurisdiction adversely to the contention of the petitioner in *Villa* v. *District Court*, 45 P.R.R. 852. In said case the lower court declared itself without power to punish as for contempt a refusal to obey an order to pay alimony adducing as basis that the adequate remedy in law was the execution of the judgment on the property of the defendant. This Court, speaking through Mr. Justice Córdova Dávila, stated:

"The duty that the husband owes his wife to satisfy her needs and to support her must be made effective in some way. When the aid of a court is invoked in claiming support, it is because the party bound to furnish it refuses to comply with this duty. It is not strange that this resistance should continue after the entry of a judgment granting an allowance, in which case the rights of the party favored by the judgment would be frustrated if no remedies were available for their enforcement. When the husband owns property, a writ of execution against that property can be issued; but if the allowance is granted on the basis of monthly payments, would it be just or reasonable to compel the prevailing spouse to move for a writ of execution every month? The contumacious resistance of the husband would give rise to a multiplicity of writs of execution; and it seems natural that measures should be taken to overcome such obstacles and difficulties in the administration of justice. If, on the contrary, the husband owns no property but periodically receives an income from his work as an employee or from any other source, execution proceedings would not be an adequate remedy, and similarly where the husband conceals his property. In both these cases the ends of justice would fail and the provisions of the Civil Code would not be complied with for lack of a proper legal remedy for the enforcement thereof. Our courts are empowered by law to act, and should have, as they actually have by virtue of the same law, all the necessary means to make their jurisdiction effective. And even if the statute failed to provide those means, this deficiency would be supplied by the inherent powers of all courts and by natural justice in

accordance with equity and the general principles of jurisprudence. The acts of a court should be infused with equity and justice.

"In the instant case we confine ourselves to a decision of the question raised. The lower court has power to punish by contempt proceedings the wilful and contumacious disobedience to an order or judgment granting maintenance. The court *a quo* declared that it lacks such power. We hold the contrary and that it can avail of said power when the circumstances of the case so require it. . . ."

The second argument that the judgment for contempt inflicts on petitioner a cruel and unusual punishment, violative of the constitutional provision which forbids such thing, deserves, in view of the circumstances of this case, our thorough consideration.

In *Dubón* v. *Casanova*, 65 P.R.R. 786—followed in *Munet* v. *Ramos*, 69 P.R.R. 328 and in *Espinosa* v. *Ramírez, Warden, supra*—we definitely recognized the authority of our courts to exercise effectively their inherent power to enforce their judgments through the coercive means of indefinite incarceration. *Cf. Germán* v. *District Court*, 63 P.R.R. 587. In the case at bar, the court which sentenced the petitioner exercised this authority by ordering the petitioner's indefinite incarceration until he complied with the order. Should the petitioner stay relentlessly in prison—if he persists in his refusal—until his obligation of support ceases by law? Under what circumstances can a court be convinced that its use of the coercive means of indefinite imprisonment, for the benefit of the minor, is not capable of producing the desired results?

We must bear in mind, however, that since this is not a proceeding for criminal contempt—to vindicate the dignity and authority of the court—the sentence for indefinite imprisonment was not intended as a punishment for petitioner's clearly disdainful conduct towards the court. The purpose of that sentence was, in aid of the court's inherent power to enforce its orders, to grant the minor through such coercive

means, the opportunity to obtain compliance with the judgment for support.

This Court in the above-mentioned cases, citing among others, *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 55 L. Ed. 797, has set forth very clearly the controlling basic principles and the scope of both the criminal and the civil contempt. Undoubtedly, in a case for civil contempt, when the contemnor has made no attempt to justify his disobedience of the order to perform an affirmative act which he is compelled to do, and arbitrarily refuses to obey, the court is empowered—in fact, it is its duty—to afford the party entitled to relief the coercive means to compel obedience of its orders. It was wise to sentence the petitioner to indefinite incarceration, and the judge acted well within the law to so sentence him, until he complied with the judgment for support. Upon being summoned to show cause why he should not be adjudged guilty of contempt the defendant did not offer any excuse to convince the court of his economic impossibility to comply with the order. He had the opportunity, yet he failed to do so, and upon being committed, as we said in *Dubón* v. *Casanova, supra,* citing the case of *In re Nevitt,* 54 C.C.A. 622, 117 Fed. 451, he carried the keys of his prison in his own pocket. That key was undoubtedly the payment of the weekly allowances to the minor, whose paternity had been adjudicated to him by the court. Soon after his incarceration, he could still have used another key to obtain his liberty: show the lower court his pecuniary inability to comply with the order directing him to pay the weekly allowance of $5 for support, *Munet* v. *Ramos, supra,* and the cases cited therein of *Rivera* v. *Torres,* 56 P.R.R. 557 and *Quiñones* v. *District Court,* 54 P.R.R. 178, for just as said pecuniary inability could have been a valid defense to show cause why he should not be punished for contempt, at any subsequent time—during his incarceration—the petitioner could have obtained his liberty if he had so proved his inability. Indefinite imprisonment for failure to pay

support money where the contemnor shows his actual inability to pay, would constitute a cruel and unusual punishment. *Brown* v. *Brown*, 187 N. E. 836; *Politano* v. *Politano*, 146 Misc. 792, 262 N.Y.S. 802.

The situation of facts in this case, however, takes us into considering a new angle of the question. When, as in the instant case, more than two years and four months have elapsed since the petitioner's indefinite commitment; when there might exist some genuine scruple of conscience to perform the affirmative act required by the judgment for support and to explain—not to justify—his insistent refusal to obey the order, his attitude being consistent at all times with his former attitude at the hearing to show cause, where he stated that he had not complied nor intended to comply with the order of the court to that effect, it is readily clear that the coercive means employed as remedial relief is, for the time being, manifestly ineffective. It is reasonable to believe that if the petitioner's long commitment has not been sufficient to erase from his conscience the scruple that made him choose indefinite imprisonment rather than to comply with the mandatory order, his continued incarceration will not attain the object pursued by his indefinite imprisonment: to pay Ruth Pérez, minor, a weekly allowance of $5 for support. This should not be understood that it is our opinion that in cases of this nature the court should not make use of the coercive means of indefinite imprisonment until judgment for support is complied with, especially when minors are involved. Courts should resort to it whenever, after the paternity is adjudicated and the allowance is granted, the defendant unreasonably refuses to pay to the person entitled to support. And courts should be cautious in considering any defense invoked by the person under duty to pay prior or subsequent to the commencement of the proceeding for contempt, which may defeat the right of the opposing party to receive such support.

In a situation like the instant case, however, in which it may be reasonably anticipated, due to the time elapsed and the circumstances involved—the petitioner denied the paternity of the minor in the civil action for support—that the continued incarceration of the contemnor will not prove to be remedial, then the indefinite imprisonment is not justified because it is ineffectual, and because it would become a cruel and unusual punishment. Under such circumstances resort should be had to other efficient remedies in order to achieve the main purpose which moved the court to impose the sentence of indefinite imprisonment and which should not depend on the voluntary act of the person compelled to pay support. In that way, the basic social problem, such as the support of a tender child by the person who was found by the court to be its father, which was intended to be solved by indefinite imprisonment, can be dealt with. If the commitment of the defendant for an indefinite term does not solve this social problem, because the minor receives no benefit as long as the defendant is committed, let the contemnor be set free and under like circumstances may other proceedings be adopted which might culminate in the security of the child's welfare by attachment and execution, on his property, rents, or salaries within the limits of the law. Or else the imprisonment which the court ordered as a means to solve a social problem—a remedial relief—would operate as an imprisonment inflicted as a punishment—a punitive measure—resulting then in a cruel and unusual punishment, without solving the problem of food for the minor.

Being convinced, as we are, that the continued imprisonment of the petitioner will not render the remedial effect intended thereby the same is not justified and the petitioner will be discharged.