UNITED STATES ex rel. McMASTER v. WOLTERS et al.

(District Court, S. D. Texas, at Galveston. August 23, 1920.)

No. 657.

1. Militia ⬤=15—Action of Governor in calling into service not reviewable by courts.

Under the authority conferred on the Governor by Const. Tex. art. 4, §§ 7, 10, and the statute enacted pursuant thereto (Vernon's Sayles' Ann. Civ. St. 1914, art. 5776), to call out the militia to enforce the laws in case of riot, or breach of the peace, or imminent danger thereof, the determination of whether such conditions exist is solely for the Governor, and his decision is not reviewable by the courts.

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Insurrection** ☞5—**Governor may institute military court to enforce civil laws.**

A Governor, having authority to call out the militia to enforce the laws, and having done so, and proclaimed martial law in a city, *held* to have power to suspend the officers of the city for failure and refusal to execute the laws, and to institute a military court to take the place of a municipal court, whose officers were suspended, with jurisdiction to enforce the ordinances of the city.

**3. Habeas corpus** ☞45 (2)—**Action of state tribunal not reviewable by federal court.**

Refusal of a state tribunal to grant a jury trial, or to allow an appeal, *held* not reviewable by a federal court on habeas corpus.

At Law. Petition for habeas corpus by the United States, on the relation of William McMaster, against Jacob F. Wolters and others. Petition denied.

John T. Wheeler, Frank S. Anderson, and D. B. MacInerney, all of Galveston, Tex., for relator.

C. M. Cureton, Atty. Gen., of Texas, E. F. Smith, of Austin, Tex., C. L. Stone, of Henderson, Tex., and John M. Mathis, of Houston, Tex., for respondents.

FOSTER, District Judge. This is a petition for a writ of habeas corpus by William McMaster, a civilian resident of Galveston, wherein it is charged that Brig. Gen. Jacob F. Wolters, Col. A. W. Bloor, and Capt. O'Brien Stevens, all officers of the Texas militia, and respectively the commanding officer of the district, the provost marshal, and the provost judge, are unlawfully restraining his liberty and detaining him in custody, in violation of his rights guaranteed by the Constitution of the United States.

The case, as made out by the pleadings and argument of counsel, and admissions in argument, is this: Gov. Hobby, of Texas, issued a proclamation on June 7, 1920, declaring there had been acts of violence in Galveston and danger of insurrection, riot, and breach of the peace, and declaring martial law in Galveston. By the same proclamation Gen. Wolters was directed to assume command of a district embracing the city of Galveston, which he did. That was followed by a proclamation on July 14, 1920, declaring that the mayor, four city commissioners, the city attorney, the judge of the city court, chief of police, the chief of detectives, and all members of the police and detective departments had failed, refused, and neglected to maintain order and preserve the peace, and suspending the city officials, and directing the commanding general to enforce order and cause the civil law to be faithfully executed. On that Gen. Wolters issued his General Order No. 12, of July 15, 1920, directing the provost marshal to take charge of the police station, city hall, office of the city judge, and all records, and directing that all persons charged with violations of city ordinances be tried by the provost marshal. This order was supplemented on the same day by General Order 13, detailing Capt. O'Brien Stevens as provost judge, with full authority to try such cases as

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

might come before him under the provisions of General Order No. 12.

With these proclamations and general orders in force, the militia on the scene and in charge of the city of Galveston, the relator was arrested on a complaint by a civilian, charging him with exceeding the speed limit for automobiles in violation of the traffic ordinances of Galveston, and tried before Capt. Stevens. He objected to the jurisdiction of the court and asked for a trial by jury. A trial by jury was denied, and his exception to the jurisdiction disregarded. He was found guilty, sentenced to pay a fine of $50, and committed to jail in default of payment.

The only question before this court is the jurisdiction of the provost court. I have examined the authorities cited by both sides; some of them are more or less persuasive, none of them in point are controlling on this court, and I think the case can be decided on fundamental principles.

[1] There is no doubt that under the Constitution and laws of Texas the Governor is charged with the duty of enforcing the laws of the state, and has the authority to call out the militia to enforce the laws, in case of riot, or breach of the peace, or imminent danger thereof. Const. Tex. art. 4, §§ 7, 10; Acts 1905, c. 104, § 13. See Vernon's Sayles' Civil Stat. Texas (Ed. 1914) art. 5776. The question as to whether there is riot, or insurrection, or breach of the peace, or danger thereof, is one solely for the decision of the Governor. The courts will not interfere with his discretion in that, and will not inquire as to whether or not the facts justify the Governor. Luther v. Borden, 7 How. 1, 12 L. Ed. 581, so, I must conclude that the Governor had complete authority to institute martial law in the city of Galveston. That is conceded by the relator. Since he had the authority to institute martial law, notwithstanding there is no statute of the state of Texas authorizing him to do so, he could do anything necessary to make his proclamation effective. If the civil officers of Galveston were not performing their duties, and not aiding in the enforcement of the law, the Governor would be authorized to suspend them. He did that, and in my opinion the suspension was legal.

[2] The question then comes up as to the appointment of this military court. The order of Gen. Wolters directs the provost marshal to enforce the civil law, and jurisdiction is given to the provost court to enforce the ordinances of the city of Galveston. The justices of the peace of the state courts are not superseded or suspended; but it is elemental that, where the same state of facts may constitute a violation of a state statute and also constitute a violation of the city ordinances, the offender may be proceeded against under either law; one does not prevent the other being enforced, so it is a mere incident that in this case the offense with which the relator was charged might also have been an offense under the state law, and would not deprive the city court of Galveston of jurisdiction to try him. The city court of Galveston was suspended, and a military officer had been appointed to sit in place and stead of the judge, and to enforce the ordinances of the city. That is not without precedent in history. When Gen. Butler

was in command of New Orleans, he did this very thing. He appointed the provost marshal and gave him jurisdiction to try civil cases. Subsequently President Lincoln created a provisional court by proclamation for the same district. The jurisdiction of this court was upheld. The Grapeshot v. Wallerstein, 9 Wall. 129, 19 L. Ed. 651.

The point is also made by relator that only the Legislature can suspend a law. Const. Texas, art. 1, § 28. Suspending a judge is not suspending a law. On the contrary, in this case the military was directed to enforce existing laws, and the provost court was created for that very purpose.

[3] It seems to me it was necessary and proper that this court should have been instituted. It is conceded in argument there are other ordinances of the city of Galveston, a violation of which would not also be a violation of any state statute. Some court would have to be instituted to try these cases. So, if a court of jurisdiction tried the offender, and did not lose jurisdiction during the course of the trial, then this court cannot inquire into any irregularities arising in the course of that trial. That would apply particularly to the statements made in argument that an appeal was denied the relator. That would be a mere irregularity; if he was entitled to an appeal, that right could be enforced by mandamus or some other proper remedy. Kohl v. Lehlback, 160 U. S. 293, 16 Sup. Ct. 304, 40 L. Ed. 432.

In regard to the denial of the trial by jury, it is well settled the federal Constitution does not guarantee a trial by jury in the state courts. It applies only to trials in the federal courts, and if some other due process of law and some other method is provided by the state statutes it is sufficient. Manifestly, in a community under martial law, a trial by jury would be impracticable.

So, on the whole, I must conclude this military court was properly constituted, and had jurisdiction for the trial of this offense, and that proceedings having been had there, and relator convicted and sentenced, his imprisonment cannot be inquired into in this court on a writ of habeas corpus.

The petition is denied.