COX v. McNUTT, Commander in Chief of Military and Naval Forces of Indiana, et al.

No. 1772.

District Court, S. D. Indiana, Indianapolis Division.

Oct. 10, 1935.

Williams, Woodsmall & Simpson, of Terre Haute, Ind., Joseph M. Jacobs, of Chicago, Ill., and Maurice J. Nicoson, of Terre Haute, Ind., for complainant.

Philip Lutz, Jr., Atty. Gen. of the state of Indiana, Edward Barce, Asst. Atty. Gen. of the state of Indiana, and Cooper, Royse, Gambill & Crawford, Otis Cook, City Atty., Walker, Hilleary & Cox, B. F. Small, Dix & Dix, and Thomas F. O'Mara, all of Terre Haute, Ind., for defendants.

Before SPARKS, Circuit Judge, and BALTZELL and SLICK, District Judges.

## PER CURIAM.

The complainant in this action is seeking to have declared null and void the proclamation of the defendant, Paul V. McNutt, as Governor of Indiana, wherein he, acting as Governor, by such proclamation directed the National Guard of Indiana to assume control of all that territory included in Vigo county. Such proclamation was under date of July 22, 1935. The original bill was filed on the 3d day of September and was assigned for hearing upon the application of the complainant for a temporary injunction on the 20th day of September. Upon that date, an amended bill of complaint was filed which seeks the same relief as that contained in the original bill. By the amended bill, the complainant, on be-half of himself and all others similarly situated, is seeking to have the proclamation of the Governor declared null and void and an injunction issued enjoining the defendants from enforcing its provisions. The defendants, in addition to the Governor, are Elmer F. Straub, Adjutant General of the Military and Naval Forces of Indiana, Earl E. Weimer, Acting Commander of the Military Forces of the state of Indiana in the area of Vigo county, William Baker, sheriff of Vigo county, James Mitchell, acting chief of police of the city of Terre Haute, Ind., Philip Lutz, Jr., Attorney General· of the state of Indiana, and Raymond J. Kearns, prosecuting attorney for Vigo county, Ind.

It is apparent that the complainant is seeking to enjoin the defendants, as officers of the state of Indiana, from doing the things which they believe to be their duty, under the Constitution and laws of the state of Indiana. Furthermore, he is seeking to have declared unconstitutional and void a proclamation or executive order of the Governor of the state, and is seeking temporary relief. Hence, such cause is properly to be determined by a statutory three-judge court, as provided in section 266 of the Judicial Code (28 USCA § 380).

The amended bill recites at length the events leading up to the issuance of the proclamation. While such recitation is perhaps immaterial in determining the issues, yet it serves as a background in determining the question of the jurisdiction of this court, which jurisdiction is challenged by the defendants in their motion to dismiss. It appears from the allegations of the amended bill that long prior to the month of June, 1934, the complainant, together with some 500 others, was regularly employed by the Columbian Enameling & Stamping Company in Terre Haute, Vigo county, Ind. At least some of such employees, of which the complainant was one, organized a labor union, known as "Federal Labor Union No. 19694" and affiliated with the Central Labor Union of Vigo county, and with the American Federation of Labor. Differences had arisen between the employer and the employees concerning wages, hours of work, conditions of employment, etc., and a written agreement was entered into at some time during the month of June, 1934, between the

employer and Union No. 19694, for the arbitration of such differences. It is further alleged that the employer refused to abide by the terms of such agreement to arbitrate, and that the union employees exercised their lawful right to cease work, and did cease work on the 23d day of March, 1935, or, in the language of the bill, "went out on a strike." Such employees, including this complainant, have not yet returned to work. This complainant, and other union members who went out on a strike, began, and continued to peacefully picket in the vicinity of the plant, such picketing being in a lawful manner and without violence. It is further charged that the employer imported some 58 men from the city of Chicago into Terre Haute, had them qualified as deputy sheriffs, and stationed them near the plant. As a result, it is charged that a labor holiday was declared by the representatives of some 40 labor unions in Vigo county, the same to be effective at 1 o'clock a. m. on July 22d. On that day approximately 15,000 persons, a majority of whom were residents of Indiana, refrained from work. The "labor holiday" continued for several days thereafter, during which time, it is averred, the regularly constituted courts of Vigo county, Ind., were open and transacting regular business, both civil and criminal, and are so open and transacting business at this time. There has never been, at any time, a breakdown, abandonment, or desertion of the civil authorities, who were, and are, able and capable of administering the affairs of the government of Vigo county. At no time has there been any invasion of Vigo county, or any insurrection, rebellion, riot, or tumult therein.

It is alleged that, pursuant to the proclamation, the defendant McNutt, as Commander-in-Chief of the Military and Naval Forces of Indiana, by force of arms, seized and assumed control of all the territory within Vigo county, under the direct command of the defendant Straub, as Adjutant General, and defendant Weimer, as Major; that approximately 1,500 members of the Indiana National Guard, fully equipped, moved into Vigo county and assumed control thereof. That complainant and other citizens of Vigo county were thereafter prohibited from lawfully assembling; that more than 158 persons, including this complainant, were arrested, imprisoned, denied the right of trial by jury, etc. That the defendants, other than the Governor, Adjutant General, and Major, are simply acting as their agents, and carrying out their commands. The complainant was arrested in his home at 2 o'clock on the morning of July 22d by police officers acting under the direction of the defendant Weimer. Such officers searched the home of said complainant, obtained valuable papers, conveyed him to the county jail, where he was confined, without bail, for several days. An attempt was made to have him released upon habeas corpus, but was unsuccessful. The amended bill continues at length, averring actions on the part of the defendants, which complainant says are in violation of his rights as an American citizen, under the Constitution of the United States.

There is addressed to the amended bill, by each of the defendants, a motion to dismiss upon the ground that the court has no jurisdiction and that the bill is wholly without merit. Other grounds are assigned, but these are the principal ones. At the time of the hearing upon the motion to dismiss, on September 20th, a hearing was also had, by affidavit, upon the application of the complainant for a temporary injunction.

The text of the proclamation, about which complaint is made, is as follows:

### "Proclamation.

"Acting under and by virtue of the Governor of Indiana, the National Guard of Indiana assumes control of all that territory included in Vigo County. This territory hereby designated as the military district until further notice is under military control.

"It is the purpose of the military authorities to conduct the affairs of this district in cooperation with the civil authorities, which become for the time being, an agency of the military authorities.

"The following notice is given to all persons in the district herein designated as being under military control.

"(a) No assembly will be permitted in the district.

"(b) No persons, other than the police, military authorities and troops will be allowed to carry arms or weapons of any description.

"(c) No persons, other than those authorized by the military authorities ingress or egress from the district.

"(d) All crowds, picketers and other assemblage will disperse immediately.

"The troops and the police, including special deputies, are charged with the carrying out of these orders, which will be rigidly enforced.

"All persons within the limits of the district are admonished to observe and rigidly comply with these instructions.

"Any person having a petition to present or complaint to make will present the same to the commanding officer for his consideration.

"This proclamation is effective on and after 5 P. M., July 22, 1935.

"In Witness Whereof, I have hereunto set my hand and caused to be affixed the great seal of the State of Indiana, at the Capitol, this 22nd day of July, 1935.

"Paul V. McNutt, Governor.
"Attest: August G. Mueller,
"Secretary of State."

The Governor is the chief executive officer of the state of Indiana, and, as such, is chargeable with the execution of its laws (Section 16, article 5, Constitution of Indiana). Section 12 of article 5 of the Constitution of the state of Indiana also provides: "The Governor shall be commander-in-chief of the military and naval forces, and may call out such forces, to execute the laws, or to suppress insurrection, or to repel invasion."

It is the contention of the complainant that the Governor has usurped the power of the legislative branch of the government in that he has suspended the operation of the civil law in Vigo county, in violation of section 26 of article 1 of the Constitution of Indiana, which provides: "The operation of the laws shall never be suspended, except by the authority of the General Assembly."

The General Assembly of the state of Indiana has answered the contention of the complainant by the enactment of statutes which give to the Governor the right to call out the military forces, under certain conditions. The General Assembly recognized the fact that it would be futile to charge the Governor, in the Constitution, with the execution of the laws, and make no provision by way of legislation whereby he could proceed to execute all laws when necessary, or in case of an emergency. Therefore, provision was made by specific statutes whereby the Governor is given authority to call out the military forces under the conditions and for the purposes set forth therein. In other words, the powers conferred upon the Governor, by the Constitution, are supplemented by Acts of the General Assembly, as follows: "Whenever it shall be made to appear to the governor that there is a breach of the peace, tumult, riot or resistance to process of this state, or imminent danger thereof, or, upon the request of either the sheriff of a county or the mayor of a city, the governor may order out any part or all of the military or naval forces of the state in aid of the civil authorities, in the suppression of such disorder." Burns' Ann. St. 1933, § 45-701.

Also: "Whenever there shall be in any city, town or county any tumult, riot, mob, or any body of men acting together by force, with intent to commit any felony or misdemeanor, or to offer violence to any person or property, or, by force and violence, to break and resist the laws of this state or the laws or authorities of the United States, or any such tumult, riot or mob shall be threatened; and the fact be made to appear to the governor, or to the mayor of any city, or to any court of record, sitting in said city or county, or any judge thereof, or to the sheriff of said county, or, in his absence, to his lawful deputy, the governor may issue his order in writing, and direct the senior or other military officers to turn out such portion of his or their command as may be necessary to quell, suppress or prevent such tumult or threatened tumult, and any officer or member of the military who shall fail promptly to obey such orders and directions of said officer or officers shall be cashiered." Burns' Ann. St. 1933, § 45-702.

■ It cannot be controverted that the Governor has wide discretion in determining whether or not an exigency requires the use of the military forces. It is also a question to be determined by him as to whether there exists a riot, a tumult, a mob, or an insurrection, or whether there is danger thereof. United States v. Wolters et al. (D. C.) 268 F. 69. If the Governor determines that an exigency requires the use of the military forces, then, in his discretion, he

has authority to call out such forces, and the courts will not interfere therewith. The Supreme Court, in the recent case of Sterling, Governor et al., v. Constantin, 287 U. S. 378, 53 S. Ct. 190, 196, 77 L. Ed. 375, has stated the law to be as follows: "By virtue of his duty to 'cause the laws to be faithfully executed,' the executive is appropriately vested with the discretion to determine whether an exigency requiring military aid for that purpose has arisen. His decision to that effect is conclusive. That construction, this Court has said, in speaking of the power constitutionally conferred by the Congress upon the President to call the militia into actual service, 'necessarily results from the nature of the power itself, and from the manifest object contemplated.' The power 'is to be exercised upon sudden emergencies, upon great occasions of state, and under circumstances which may be vital to the existence of the Union.' Martin v. Mott, 12 Wheat. 19, 29, 30, 6 L. Ed. 537. Similar effect, for corresponding reasons, is ascribed to the exercise by the Governor of a state of his discretion in calling out its military forces to suppress insurrection and disorder. Luther v. Borden, 7 How. 1, 45, 12 L. Ed. 581; Moyer v. Peabody, 212 U. S. 78, 83, 29 S. Ct. 235, 236, 53 L. Ed. 410. The nature of the power also necessarily implies that there is a permitted range of honest judgment as. to the measures to be taken in meeting force with force, in suppressing violence and restoring order, for, without such liberty to make immediate decisions, the power itself would be useless. Such measures, conceived in good faith, in the face of the emergency, and directly related to the quelling of the disorder or the prevention of its continuance, fall within the discretion of the executive in the exercise of his authority to maintain peace."

It is perhaps not necessary to examine the evidence to determine the situation at the time of the issuance of the proclamation under attack, since, under the law, the Governor is "to determine whether an exigency requiring military aid has arisen." It may be significant, however, to observe that the "labor holiday," in which 15,000 persons left their work, began at 1 o'clock on the morning of July 22d, and that the proclamation became effective at 5 o'clock in the evening of the same day. Under the evidence,

business houses were forced to close during that day by the threats of mobs congregated in and near such business houses; the employees of the Dresser Power Station, which furnishes much electricity for the city of Terre Haute, as well as for the surrounding country, both in Indiana and Illinois, were threatened with violence if they continued to work; the employees of the Water Street Power Station were likewise threatened. Persons delivering milk to the hospitals, hotels, and citizens of Terre Haute were compelled to cease their work. Taxicab service, street car service, and all other transportation were forced to be abandoned. Thousands of people congregated upon the streets of Terre Haute, and violence was threatened. It is clearly shown, by the undisputed evidence, that the Governor acted only after the civil authorities of Terre Haute, and of Vigo county, failed to restore order and were unable to protect the citizens and property of that city and county. The civil authorities are not to be criticized because of their failure to restore order. They realized the situation early in the afternoon, and appealed to the Governor for assistance. Both the sheriff of Vigo county and the mayor of the city of Terre Haute telegraphed the Governor that they were unable to cope with the situation, the mayor saying in his telegram, in part, that "We consider the situation serious enough to warrant the protection of the state militia before night." In addition to this telegram, the sheriff, mayor, prosecuting attorney, chief of police, and board of public works and safety dispatched to the Governor, by airplane, on the afternoon of July 22d, the following petition:

"Terre Haute, Indiana, July 22, 1935.

"Honorable Paul V. McNutt, Governor of the State of Indiana, State House, Indianapolis, Indiana.

"Dear Sir: This is to notify you that the strike situation in Terre Haute is beyond our control. A general strike is now in progress in sympathy with the Stamping Mill strikers. We cannot maintain law and order. The sheriff and city police force have done everything possible to maintain law and order, and it is entirely beyond our control. Citizens are calling in constantly. Mobs are closing stores and most all business is closed, cutting off food and milk supplies. Bus, street car and taxi service suspended.

Oil stations are closed. We consider the situation serious enough to warrant the protection of the state militia before night.

"Yours truly,
"Sam Beecher
"Mayor.
"W. Robert Paige
"Otis Cook
"Wm. C. Norcross
"Board of Public Works & Safety.
"Lewis A. Wheeler
"Chief of Police.
"William Baker
"Sheriff.
"Raymond J. Kearns
"Prosecuting Attorney of the 43rd Judicial Circuit."

The Governor had not issued the proclamation until the receipt of this petition, but upon receipt thereof, the proclamation was issued and the troops dispatched to the scene of the trouble.

As aforestated, the Governor is chargeable with using discretion in calling out the military forces, and the evidence justifies the conclusion that he exercised a wise discretion in this instance.

"Arbitrary and capricious acts of the Governor, and those having no relation to the necessities of the situation, may be enjoined by the courts, as any clear abuse of power by an executive may be enjoined." Powers Mercantile Co. et al. v. Olson, Governor of Minnesota (D. C.) 7 F. Supp. 865, 868.

There is, in the instant case, however, no evidence of any arbitrary and capricious acts upon the part of Governor McNutt, but, on the contrary, the evidence shows that he acted clearly within his discretion, and to protect the lives and property of the citizens of Vigo county.

The complainant charges that he is deprived of certain rights guaranteed him by the Constitution of the United States. Complaint is made of his arrest, imprisonment, denial of trial by jury, denial of right of habeas corpus, etc. The Supreme Court, in the case of Moyer v. Peabody, 212 U. S. 78, 83, 29 S. Ct. 235, 236, 53 L. Ed. 410, more than a quarter of a century ago, seems to have answered that contention in the following language: "The Constitution is supplemented by an act providing that 'when an invasion of or insurrection in the state

is made or threatened, the governor shall order the national guard to repel or suppress the same.' * * * That means that he shall make the ordinary use of the soldiers to that end; that he may kill persons who resist, and, of course, that he may use the milder measure of seizing the bodies of those whom he considers to stand in the way of restoring peace. Such arrests are not necessarily for punishment, but are by way of precaution, to prevent the exercise of hostile power. So long as such arrests are made in good faith and in the honest belief that they are needed in order to head the insurrection off, the governor is the final judge."

In the instant case, the evidence is undisputed that at the time of the issuance of the proclamation by the Governor there were existing in Terre Haute riots and mobs, and that a state of insurrection did exist. The civil authorities were unable to cope with the situation and asked the Governor to extend military aid. In compliance with the statute, not only one, but both the sheriff of the county and the mayor of Terre Haute requested the Governor to send military assistance. The purpose of martial law is to restore law and order. It is not necessarily to punish for the commission of an offense. If it becomes necessary to imprison a person, to deprive him of the right of a trial by jury, to deny him the right of habeas corpus, or to deprive him of other rights, in order to restore law and order, the military authorities are given that power. Under the law, the Governor had authority to declare martial law in the affected area. That authority must be continued so long as it is necessary to assure the restoration of law and order. Moyer v. Peabody, supra; In re Moyer, 35 Colo. 159, 85 P. 190, 12 L. R. A. (N. S.) 979, 117 Am. St. Rep. 189; Powers Mercantile Co. et al. v. Olson, Governor, etc., supra; In re Boyle, 6 Idaho, 609, 57 P. 706, 45 L. R. A. 832, 96 Am. St. Rep. 286; Boyle v. Sinclair, 178 U. S. 611, 20 S. Ct. 1029, 44 L. Ed. 1215.

There is not a scintilla of evidence which justifies the issuance of a temporary injunction in this case. The affidavits filed on behalf of the defendants are entirely relevant and pertinent, and, therefore, the motion of complainant to strike the same will be denied.

The motion of defendants to dismiss the bill will be overruled, and the application of complainant for a temporary injunction denied.

An entry will be prepared accordingly.