## UNITED STATES v. BEST.
### Cr. No. 17666.

District Court, D. Massachusetts.

March 8, 1948.

On Motion for Discharge from Custody

March 11, 1948.

See also 73 F.Supp. 654.

William T. McCarthy, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., Theron L. Caudle, Asst. Atty. Gen., Clyde E. Gooch and Tom De-Wolfe, Sp. Assts. to Atty. Gen., and Samuel C. Ely and Victor C. Woerheide, Sp. Attys., Dept. of Justice, both of Washington, D. C., for plaintiff.

Charles W. Bartlett, Brenton K. Fisk, and Henry M. Leen, all of Boston, Mass., for defendant.

FORD, District Judge.

The defendant has filed a motion under Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, requesting that subpoenas issue to certain named witnesses to procure their attendance at the trial of his case. Most of these witnesses are aliens residing in a foreign country.

There is grave doubt that Rule 17(b) permits the court to order subpoenas to issue to witnesses outside of the United States. Title 28 U.S.C.A. § 656 allowed subpoenas to issue to witnesses residing within 100 miles of the place of trial. Rule 17(b) removes this limitation and allows witnesses anywhere in the United States to be subpoenaed by an indigent defendant (See Judge Holtzoff, p. 196, New York University Institute proceedings). It does not seem that the rule was enlarged to include witnesses residing in foreign countries.

Furthermore, authority for an order of the court to issue subpoenas on application of the Attorney General to witnesses beyond the jurisdiction of the United States is confined to citizens of the United States or persons domiciled therein. 28 U.S.C.A. § 712. Persons indicted for capital crimes have like privileges. 18 U.S.C.A. § 563. Aliens who are inhabitants of a foreign country cannot be compelled to respond to a subpoena. They owe no allegiance to the United States. Cf. Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375.

This motion lies within the discretion of the Court. Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343, Crumpton v. United States, 138 U.S. 361, 11 S.Ct. 355, 34 L.Ed. 958, construing R.S. Sec. 878 (28 U.S.C.A. § 656) of which present Rule 17(b) is an enlargement.

The evidence sought to be adduced from all the witnesses designated is evidence to prove that a worldwide "Comintern" conspiracy actually existed at the time the defendant is alleged to have committed the treasonable acts laid in the indictment. The only materiality in this issue would seem to be that the defendant's knowledge and belief of its existence had some bearing on his state of mind and intent at the time he is alleged to have committed the acts of treason laid in the indictment. How far the defendant may be allowed to prove his knowledge and beliefs in this direction and the basis therefor, it is not now necessary to state. What may be stated is that to make the truth of the fact whether such a conspiracy existed an issue in the case, and permit witnesses to be subpoenaed to prove it, would cause this trial to be postponed indefinitely and, in the event of a trial, prolong it without end. Also, the real issues involved would be unduly clouded. Moreover, the truth of whether the conspiracy existed is hardly capable of proof and no jury could determine whether such a conspiracy actually existed.

With respect to named United States citizens allegedly living somewhere in the United States, there is no proper showing in defendant's motion under Rule 17(b) to warrant the court in issuing a subpoena for any of the witnesses named.

The motion is denied.

On Motion for Discharge from Custody.

This is a motion to dismiss the indictment and discharge the defendant made by counsel on February 11, 1948. It is based on lack of personal jurisdiction over the defendant.

At the hearing on the motion on February 18, 1948, the following facts appeared:

(1) The defendant was arrested without process in Austria by the British military forces on or about January 29, 1946.

(2) The defendant was taken into custody from the British by the United States Army authorities without process about three weeks later and confined in the Army prison barracks at Gmunden, Austria, in the American Zone.

(3) About the middle of March, 1946, the defendant was taken by the United States Army authorities to Camp King, a United States military camp, at Frankfort-am-Main, in Germany, and later to Berlin. At a later date defendant was returned to Camp King.

(4) About December 10, 1946, the defendant was taken from Camp King, Germany, to Paris, France, by the United States Army authorities.

(5) On December 12, 1946, the defendant, while still in the custody of the United States Army, was taken by plane from Paris to the Azores where the plane arrived on December 13, 1946 and stopped a few hours, and from there to Newfoundland where the plane made a stop. After leaving Newfoundland the next stop made by said plane was on December 14, 1946 at Westover Field, Chicopee, Massachusetts, where it arrived about 1:45 A.M. The defendant was taken off the plane at Westover Field and remained there for about three hours, part of this time being spent in the passengers' lounge in the passenger terminal building. At about 5 A.M., on the same day, the defendant boarded another plane and was then flown to Washington, D. C., where the plane landed on December 14, 1946.

(6) The defendant was at all times from February 10, 1946 to December 14, 1946, under constraint of the military forces of the United States.

(7) An indictment for treason was returned against the defendant in the United States District Court for the District of Columbia on July 28, 1943.

(8) The defendant was arraigned on January 6, 1947 before the District Court for the District of Massachusetts on an indictment for treason that had been returned on December 14, 1946 in that court.

Conclusions

■ Assuming, arguendo, the arrest, detention and removal to be illegal, the motion is denied on the authority of Pettibone v. Nichols, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148, 7 Ann.Cas. 1047; In re Johnson, 167 U.S. 120, 77 S.Ct. 735, 42 L. Ed. 103; Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934; Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283; Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; McMahan v. Hunter, 10 Cir., 150 F.2d 498; United States ex rel. Voigt v. Toombs, 5 Cir., 67 F.2d 744; Whitney v. Zerbst, 10 Cir., 62 F.2d 970; United States v. Unverzagt, D.C., 299 F. 1015; Ex parte Lamar, 2 Cir., 274 F. 160.

■ However, this court is of the opinion that the military authorities in the occupied countries of Austria and Germany had a right to arrest and detain the defendant where they had, as they did here, reasonable grounds to believe that the defendant was a threat to the safety of the military occupation. Also I believe they had a right to remove him from those countries. The defendant here had been indicted for treason in 1943; there was reasonable ground to believe he had participated in traitorous conduct toward his own country. At large he might very well be an enemy of the occupation forces organizing resistance movements, feeding the discontent of the population and hampering the restoration of the peace destroyed by the Nazi regime. The least the military should be permitted to do in his case was to arrest him and remove him from those areas. (City of New Orleans v. Steamship Co., 87 U.S. 387, 20 Wall. 387, 22 L.Ed. 354; Luther v. Borden, 48 U.S. 1, 46 How. 1, 46 L.Ed. 581). Without such power in an occupied country, military authority would mean little.

Moreover, under the directive issued to the Commander-in-Chief of the United States forces in Austria, the military authority were empowered to arrest and keep under their control, pending decision by the Allied Council or higher authority, persons "believed to have committed offenses against his national law in support of the German war effort". (Joint Chief of Staff Directive to Commander-in-Chief of the United States Forces of Occupation Regarding the Military Government of Austria, pp. 72, 75.) The defendant had been indicted for treason in the United States; his activities were well known to the military. There was nothing unreasonable, in view of this directive and the conditions that prevailed in Austria, to arrest him, remove him from Austria to the United States, and there turn him over to the civil courts for trial on the charge of treason.

The motion is denied for the reasons stated.