UNITED STATES of America, Appellee,

v.

Robert Jean THERESIUS FILIPPI,
Defendant, Appellant.

No. 90–1277.

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1990.

Decided Nov. 2, 1990.

José Antonio (Abi) Lugo, with whom Victoria A. Ferrer–Kerber and Bufete José Antonio (Abi) Lugo, were on brief, for defendant, appellant.

Jeanette Mercado–Ríos, Asst. U.S. Atty., with whom Daniel F. López–Romo, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, TORRUELLA, Circuit Judge, and VAN GRAAFEILAND,* Senior Circuit Judge.

TORRUELLA, Circuit Judge.

Robert Jean Theresius Filippi appeals his conviction for knowingly importing cocaine into a territory of the United States, and knowingly possessing cocaine aboard an aircraft arriving into a territory of the United States. He claims that his Sixth Amendment compulsory process right and Fifth Amendment due process right were violated by the Government's refusal to help him transport a defense witness from Ecuador. Additionally, Filippi challenges the trial court's denial of his motions for mistrial and acquittal, and he claims error in the imposition of his sentence. We affirm the conviction.

## I. BACKGROUND

Filippi, a citizen of France, left Quito, Ecuador on June 18, 1989, aboard a flight to Barcelona, Spain, with scheduled stops in Puerto Rico and Madrid. All in-transit luggage was checked for contraband while the airplane was stopped in Puerto Rico. A suitcase which emitted a strong chemical odor and felt unusually hard and heavy aroused the suspicion of inspectors. Finding no cocaine inside the suitcase, the inspectors tested a fragment of the suitcase itself. The fragment tested positive for cocaine. A second, similar suitcase also tested positive. Filippi's name, address and claim tag were attached to both suitcases.

At trial, Filippi testified in his own defense. He stated that a few days before departing Ecuador his own suitcases had been stolen, along with his passport.[1] Urgently needing luggage for his trip, Filippi purchased the two new suitcases from vendors at an open air market. He claimed to have noticed nothing unusual about the appearance or odor of the suitcases.

According to Filippi, an Ecuadorian citizen named Manuel Oswaldo Jinés–Díaz had first-hand knowledge of the above events. Filippi claims that Jinés–Díaz placed an advertisement requesting return of the stolen passport and helped pack the new suitcases. Thus, Jinés–Díaz could serve as a witness to Filippi's otherwise uncorroborated testimony.

Filippi, however, was unable to secure the presence of Jinés–Díaz at trial, although not for lack of trying. It appears from the record that the following events transpired just prior to and during Filippi's trial. Filippi's wife, Pierette Teychenne, traveled to Ecuador to request that Jinés–Díaz travel to Puerto Rico in order to appear at the trial. Jinés–Díaz agreed to testify, and on September 19, 1989, accompanied Teychenne to the American Embassy in Quito to obtain an entrance visa. The Vice–Consul in Quito denied the visa.

On September 25, Filippi's counsel wrote a letter to the United States Attorney prosecuting the case, informing her of the above events and requesting her assistance in procuring a visa for Jinés–Díaz. A second letter dated September 26 from Filippi's counsel to the United States Attorney reiterated the necessity of obtaining Díaz at trial. It does not appear that the United States Attorney responded to these letters.

Filippi's trial commenced on September 28. Before the jury was called, counsel for the defendant spoke to the trial judge and requested his help in securing the presence of Jinés–Díaz. The trial judge expressed uncertainty about the appropriate procedures, and asked the United States Attorney to lend assistance. On September 29, the trial judge wrote a letter to the Vice–Consul in Quito urging that Jinés–Díaz be given a non-immigrant visa. The letter read:

TO WHOM IT MAY CONCERN:

It has come to our attention ... that the United States Consul's Office in Qui-

---

* Of the Second Circuit, sitting by designation.

1. A police report filed by Filippi reporting the theft was introduced into evidence at trial. Only the theft of the passport, however, and not the purportedly stolen suitcases, was listed on the report. Filippi's explanation of this discrepancy was that there was not enough time to report the stolen suitcases before he was scheduled to leave Ecuador.

to, Ecuador will reconsider the application of Mr. Manuel Oswaldo Jinés Díaz for a non-immigrant visa into the United States, upon receipt of a confirmation by this Court that Mr. Jinés Díaz's presence is necessary in proceedings before this Court.

Accordingly, we would like to inform the United States Consul's Office that Mr. Jinés Díaz's presence before this Court in San Juan, Puerto Rico is both urgent and necessary and that we would appreciate the prompt review of his visa application taking this matter into consideration.

> Sincerely,
> [signed]
> RAYMOND L. ACOSTA

This letter seems to have caused some confusion in Quito. At any rate, it produced no results.

The next step was a letter sent by Filippi's counsel to the Parole Division of the Immigration and Naturalization Service ("INS") in Washington, requesting a parole for Jinés–Díaz. By telephone on October 10, an INS official notified the defense attorney that the customary procedure was for the United States Attorney to request a Public Interest Parole.

In court on October 10, the attorneys again conferred with the judge on the subject of the absent witness. The judge, appearing distinctly annoyed, ordered the United States Attorney "to request a Special Public Interest Parole for Mr. Jinés Díaz and ... to assist in bringing this material witness to this country to testify at trial."

The United States Attorney filed a Motion for Reconsideration of the court's order, claiming that she had not been notified of the existence of the witness until two days before the trial began. She stated further that Fed.R.Crim.P., Rule 17(e)(2) set forth the proper procedure for assuring the presence of a witness abroad.[2]

The controversy soon terminated, albeit without resolution. On October 12, Filippi's attorney agreed to proceed at trial without Jinés–Díaz rather than subject his client to a six week delay in proceedings. The trial continued, resulting in the convictions appealed from herein.

## II. COMPULSORY PROCESS

The essence of Filippi's appeal is that the actions of the United States Attorney and the INS combined to deny him compulsory process as guaranteed by the Sixth Amendment and that his due process right under the Fifth Amendment was also thereby violated. We agree that the prosecutor here did not act in accordance with the obligations imposed on her as an agent of justice. *See, e.g., United States v. Doe,* 860 F.2d 488, 494 n. 4 (1st Cir.1988) ("A prosecutor does not represent an entity whose interests include 'winning' at all costs. Instead, his client is society, seeking justice rather than victory."), *cert. denied sub nom., Crespo–Herrera v. United States,* 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 430 and *Andrades–Salinas v. United States,* 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989). Nevertheless, we conclude that Filippi waived his constitutional right when he decided to proceed at trial without his witness.

The right of a criminal defendant to secure witnesses in his favor is encompassed within the Sixth Amendment. *Blaikie v. Callaghan,* 691 F.2d 64, 66 (1st Cir.1982). In *Washington v. Texas,* 388 U.S. 14, 87

---

**2.** The Government makes the same statement in its brief, but it is incorrect. Fed.R.Crim.P. 17(e)(2) states: "A subpoena directed to a witness in a foreign country shall issue under the circumstances and in the manner and be served as provided in Title 28, U.S.C., § 1783." Section 1783, in turn, provides in part that: "A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country." 28 U.S.C. § 1783. Plainly, Rule 17(e)(2) and § 1783 do not apply to a foreign national residing outside the United States. *United States v. Gordon,* 634 F.2d 639, 645–46 (1st Cir.1980). The United States has no subpoena power over a foreign national in a foreign country. *United States v. Haim,* 218 F.Supp. 922, 926 (S.D.N.Y.1963); *United States v. Best,* 76 F.Supp. 138, 139 (D.Mass.1948), judgment *aff'd,* 184 F.2d 131 (1st Cir.1950).

S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense ... This right is a fundamental element of due process of law.

*Id.* at 19, 87 S.Ct. at 1923. Of course, the compulsory process right is not absolute. *United States v. Campbell,* 874 F.2d 838, 851 (1st Cir.1989). In order for the right to be violated the "sovereign's conduct" must "impermissibly interfere[ ] with the right to mount a defense." *United States v. Hoffman,* 832 F.2d 1299, 1303 n. 3 (1st Cir. 1987). The contested act or omission must be attributable to the sovereign, and it must cause the loss or erosion of material testimony which is favorable to the accused. *Id.* at 1303; *see also United States v. Torres López,* 851 F.2d 520, 527 (1st Cir.1988), *reh'g denied, cert. denied,* 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989).

The trial judge in this case found that Jinés–Díaz was a material witness, and his testimony, assuming that Jinés–Díaz would have testified as expected, would have been favorable to the defense. Thus two of the elements of the test are satisfied. The remaining elements are (1) whether the contested action is attributable to the sovereign, and (2) whether it caused the loss of the testimony.

■ With regard to the first remaining element, the right of compulsory process does not ordinarily extend beyond the boundaries of the United States. *United States v. Zabaneh,* 837 F.2d 1249, 1260 (5th Cir.1988). This limitation is supported by practical considerations:

> [T]he Sixth Amendment can give the right to compulsory process only where it is within the power of the federal government to provide it. Otherwise any defendant could forestall trial simply by specifying that a certain person living where he could not be forced to come to this country was required as a witness in his favor.

*United States v. Greco,* 298 F.2d 247, 251 (2d Cir.), *cert. denied,* 369 U.S. 820, 82 S.Ct. 831, 7 L.Ed.2d 785 (1962). The government has no power to compel the presence of a foreign national residing outside the United States. See *supra* note 2. Thus, a Sixth Amendment violation in this case cannot rest on the failure to issue a subpoena.

■ The Government's power to subpoena, however, is not at issue here. Jinés–Díaz did not require compulsion. He would have willingly appeared at trial but was unable on his own to overcome the immigration hurdles blocking his entry into the United States. Thus the onus on the United States was not to compel the attendance of Jinés–Díaz, but merely to make it possible by requesting a Special Interest Parole from the INS. This it failed to do, despite several requests for assistance from both the defendant and the judge. Moreover, this failure directly caused the loss of the defendant's only material witness. Such a deliberate omission to act, where action was required, by the United States Attorney constitutes a violation of the Sixth Amendment right to compulsory process and, derivatively, the right to due process protected by the Fifth Amendment.

*United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), does not compel a contrary finding. In that case, the contested action of the government was the deportation of alien eyewitnesses before the defendant had the opportunity to interview them. The Court found that because the government is charged with the "dual responsibility" of regulating immigration as well as prosecuting criminal offenders, "its exercise of its manifold responsibilities is not to be judged by standards which might be appropriate if the Government's only responsibility were to prosecute criminal offenses." *Id.* at 866, 102 S.Ct. at 3446. Given this circumstance, the Court imposed a requirement that a criminal defendant make "some plausible showing" that the lost evidence would be "both material and favorable" to the defense. *Id.* at 867 & n. 7, 102 S.Ct. at 3446 & n. 7. The mere fact of deportation *per se* would not suffice to

establish a Sixth Amendment violation. *Id.* at 873, 102 S.Ct. at 3449–50.

■ In this case, the government cannot point to its responsibility for regulating immigration to justify its conduct. Moreover, Filippi has made the preliminary showings of materiality and favorability required by *Valenzuela–Bernal.* The trial judge was satisfied that Jinés–Díaz was a necessary witness and would have ordered a continuation in the trial to secure his presence. Thus, were it not for the decision of counsel to proceed at trial without Jinés–Díaz, this court would conclude that the Sixth Amendment had been violated.

That decision, however, constituted a knowing and intelligent waiver of Filippi's constitutional right. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (defining waiver as "an intentional relinquishment or abandonment of a known right or privilege."). *See Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 2541–42, 45 L.Ed.2d 562 (1975) (waiver of Sixth Amendment right to counsel); *United States v. Nobles,* 422 U.S. 225, 240 n. 15, 95 S.Ct. 2160, 2171 n. 15, 45 L.Ed.2d 141 (1975) (waiver of Sixth Amendment right to effective assistance of counsel); *Dickey v. Florida,* 398 U.S. 30, 48–50, 90 S.Ct. 1564, 1574–75, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring) (waiver of Sixth Amendment right to speedy trial); *Singer v. United States,* 380 U.S. 24, 34, 85 S.Ct. 783, 789–90, 13 L.Ed.2d 630 (1965) (waiver of Sixth Amendment right to jury trial); *United States v. Campbell,* 874 F.2d 838, 845 (1st Cir.1989) (waiver of Sixth Amendment right to counsel); *Pettijohn v. Hall,* 599 F.2d 476, 482 (1st Cir.) (waiver of Sixth Amendment right to present witnesses), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *United States v. Taylor,* 478 F.2d 689, 690–92 (1st Cir.) (waiver of Sixth Amendment right to confront witnesses), *cert. denied,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973).

Filippi may have been, as he now claims, physically unable to endure the time it would take to accomplish the necessary procedures. Nevertheless, he weighed the benefit of securing his witness (known to him alone) against the possible six-week delay in the trial, and decided to proceed. We must assume that Filippi was in a better position to make this decision than the other parties involved. Moreover, it appears that the defense knew of the existence of Jinés–Díaz as a witness since early June, yet failed to notify the court or the prosecutor until the eve of the trial. Thus, Filippi himself must bear some of the responsibility for the potential delay in proceedings. *See Hoffman,* 832 F.2d at 1305 (no Sixth Amendment violation where, before trial, 239 days elapsed during which the defendant made few, if any, attempts to locate his witness).

We conclude, therefore, that although the actions of the United States Attorney did not pass muster under the Sixth and Fifth Amendments, the right to compulsory process was waived at trial and cannot be used here to overcome the conviction.

### III. MOTION FOR MISTRIAL

■ While Filippi was on the witness stand, the prosecutor asked a series of questions relating to prior criminal convictions dating back to 1980 and 1968. This criminal record, however, was not supported by the requisite evidentiary foundation. The trial judge excluded the evidence and instructed the jury to disregard the prosecutor's questions. At the close of trial, Filippi requested a jury instruction to cure any prejudice which may have resulted from the improper questioning, or, "in the absence of this instruction defendant requests a mistrial." The trial court denied the mistrial and gave substantially the requested jury instruction. Neither party objected to the instructions as given. As the prior conviction evidence was never admitted, and the jury heard two curative instructions, there has been no prejudicial harm to Filippi that would demand a mistrial.

### IV. MOTION FOR ACQUITTAL

■ Filippi contends that the trial court erred in refusing to grant his motion for judgment of acquittal based on insufficiency of the evidence. In considering a claim

of insufficiency of the evidence, this court views the evidence and all reasonable inferences in the light most favorable to the prosecution, and determines whether a rational jury might fairly find guilt beyond a reasonable doubt. *United States v. Cambara*, 902 F.2d 144, 146 (1st Cir.1990); *United States v. Mount*, 896 F.2d 612, 615 (1st Cir.1990). This court will not assess the credibility of the witnesses, however, as that task is within the sole province of the jury. *Torres López*, 851 F.2d at 527.

The evidence in this case is not overwhelming, but it is typical of the evidence found in many drug smuggling cases, where the main evidence consists of the defendant's possession of the contraband. *See, e.g., United States v. García*, 905 F.2d 557, 560 (1st Cir.1990) (conviction upheld on evidence of contraband found in checked suitcase bearing defendant's claim tag, where defendant was also aboard airplane), *petition for cert. filed*, Aug. 31, 1990, No. 90–5612. The evidence includes Filippi's possession of the cocaine-impregnated suitcases, their extraordinary odor and texture, and his explanation of how they came into his possession. It cannot be said that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

## V. SENTENCING

■ The final issue raised by Filippi on appeal concerns the sentence imposed under the Sentencing Guidelines. At the sentencing hearing, the trial judge determined that for sentencing purposes the amount of cocaine involved was 1,500 grams. The judge further determined that it was appropriate to decrease the guideline level by two levels because Filippi was a minor participant. The guideline range of imprisonment at the resulting base level is 51 to 63 months. Filippi was sentenced to a term of imprisonment of 57 months, with four years of supervised release. Filippi now argues that the amount of cocaine used as the basis for establishing the offense was inaccurate. For a number of reasons, we reject his appeal.

First, although it is true that the two experts who submitted evidence on the amount of cocaine contained in the suitcases differed in their findings, both experts found that the amount exceeded 1,500 grams. Moreover, Filippi's own expert actually estimated the amount of cocaine as higher than the expert for the United States proved at trial. The United States proved 1,555.2 grams, whereas Filippi's expert estimated 1,721.3 grams. Finally, for sentencing purposes, the amount of cocaine is a fact which the Government need prove only by a preponderance of the evidence. *United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989). This court will not reverse such a finding unless it is clearly erroneous, *United States v. Preakos*, 907 F.2d 7, 8 (1st Cir.1990), which in this case it is not. Therefore, Filippi's challenge to the amount of cocaine used to determine his sentence is without merit.

For the reasons expressed above, we affirm the conviction.

*Affirmed.*